Judge Edwin A. Lombard hThe Appellant, RMDR Investments, Inc. (“RMDR”), seeks review of the district court’s May 31, 2016 judgment ordering its eviction from property owned by lessor 429 Bourbon St., LLC (“the Appel-lee”). The appeal has been consolidated with a supervisory writ application filed by RMDR, which seeks review of the denial of its Ex Parte Motion to Release Continuing Suspensive Appeal Bond. Finding that the judgment of the district court is not manifestly erroneous, we affirm. The exceptions of lack of justiciable controversy and no cause of action of RMDR are denied. The answer to appeal of the Appellee is denied. Lastly, the writ application of RMDR is also denied. Facts: In January 2006, RMDR began leasing commercial space at 429-433 Bourbon St. (“the Property”), in New Orleans, from the Appellee. RMDR, doing business as Babe’s Cabaret, operated a gentlemen’s club and bar at the leased location-for approximately a ten-year period. The initial lease (“the Lease”) was executed by the parties in November 2005, and had a 60-month term commencing on January 1,2006. The Lease provided for a percentage-based rental payment obligating RMDR to pay the |gAppellee “a percentage rent of twenty (20%) percent of annual gross sales income, before any payments or adjustments of expenses of any kind, and such percentage of any and every sources of business at the premises, with a cap of $50,000 per month.” However, the Lease did not contain a definition of “annual gross sales income.” RMDR was also required to annually remit to the Ap-pellee 15% of its profits at the Property. Moreover, Chandru Motwani, the Appel-lee’s managing member, personally had a 15% ownership interest in RMDR. The' Lease further provided RMDR with three options to renew for an additional five-year period. In 2009, RMDR’s ownership changed. That same year, the parties executed an amendment to the Lease (“Amended Lease”) imposing the following additional obligations upon RMDR to maintain and produce reports of its income and other financial records to the Appellee: 5.07 Maintenance of Books and Records. Throughout the term of this Lease, LESSEE shall maintain and preserve, for the longer of three (8) years or as required by federal and state tax authorities, after the dates of their preparation, full, complete and accurate books, records and accounts under and subject to generally-accepted accounting principles, including, but not limited to all income, of whatever source, generated by every source of business at the premises, LESSEE’S obligation to preserve such books, records and accounts shall survive the termination hereof. 5.08 Monthly Reports. LESSEE shall, at LESSEE’S expense, prepare and submit to LESSOR by the fifteenth (15th) day of each month (commencing March 15, 2009), a statement accurately reflecting for the immediately preceding month (or part thereof) all gross sales income, (including, but not limited to cover type charges, tip income), all expenses (including, but not limited to all alcohol and other inventory purchases, and payroll), and such other data or information as LESSOR may reasonably require. 5.09 Financial Statements. Within thirty (30) days following the end of each month during the term of this |3Agreement, LESSEE shall, at LES-' SEE’S expense, submit to LESSOR a balance sheet and an unaudited monthly profit and loss statement for every source of business at the premises. Each statement shall be signed by an authorized officer of LESSEE, attesting that it is true and correct. In addition, LESSEE shall, at LESSEE’S expense, submit to LESSOR, within ninety (90) days following LESSEE’S fiscal year end, a complete annual financial statement, prepared under and subject to generally accepted accounting principles by a certified public accountant reasonably satisfactory to LESSOR, showing the result of the operations of every source of business at the premises (“business”) during such fiscal year. 5.10 Additional Reports. LESSEE shall also submit to LESSOR, for review and audit, such other forms, périodic and other reports, records, information and data as LESSOR may reasonably designate, in the form and at the times and .places reasonably, required (from time to time) by LESSOR, upon request, including, but not limited, to sales tax statements and balance sheets. [Emphasis added.] It is undisputed that RMDR tendered monthly rental payments to the Appellee throughout its tenancy. Nevertheless, in October, 2014, Mr. Motwani, acting on the Appellee’s behalf, sent correspondence to RMDR requesting monthly accounting reports required by the Lease from June 2009 through the date of the letter. RMDR, however, only submitted records for nine of the requested months. Moreover, after it delayed producing its books and records in New Orleans for the Appel-lee’s review, RMDR eventually produced some of the requested financials. The Appellee later retained an independent accounting firm to examine RMDR’s books and records following another incomplete record submission by RMDR. Based upon the accounting firm’s report, prepared by Debbie Sawyer, CPA, the Ap-pellee concluded that' RMDR had underpaid its rent by $605,822,91 from January 2012 to December 2014. The $605,822.91 sum totaled $852,369.401 ¿with interest and penalties due under the Lease and/or Amended Lease. The Appellee placed RMDR in default and demanded the delinquent payments due be paid by June 10, 2015. It terminated the Lease the following month due to RMDR’s noncompliance. The Appellee subsequently filed a petition for summary eviction, alleging that RMDR breached the Lease and Amended Lease. The Appellee alleged that RMDR breached the Lease or Amended Lease in the following three respects: 1) failed to pay the full rent required by the Lease; 2) failed to. provide complete financial' records; and 3) allowed unlawful activities to take place on the leased premises. Additionally, the Appellee asserted that RMDR’s attempt to exercise the second option to extend the Lease term was null and void.[1] During a four-day bench trial, the district court heard testimony from eight witnesses, including three experts: Charles Theriot, CPA, who testified for RMDR; Bert Verdigets, CPA, who testified on behalf of the Appellee; and Ms. Sawyer. The district court entered judgment on May 31, 2016, ordering the eviction of RMDR; RMDR was ordered to vacate the Property by June 6, 2016. The district court also issued Reasons for Judgment wherein it explained that RMDR breached the Lease and/or Amended Lease by: 1) failing to maintain and preserve full, complete and, accurate books, records and accounts for a three year period; 2) failing to have an authorized officer of RMDR sign the monthly balance sheet and profit and loss statements, attesting to their truth; 3) failing to produce complete Lannual financial statéments prepared by a CPA; and 4) failing to accurately report income and thus, not' paying the proper amount of monthly rent. This timely appeal followed.[2] RMDR presents the following three questions for review, which we understand to be- its assignments of error and will refer to them as such throughout this opinion: 1. The district court erred in ordering the eviction of RMDR when the Ap-pellee readily accepted the financial records of RMDR for many years, and there was no competent evidence [sic] and failed to show all of the records were inadequate; 2. The district court erred in ordering RMDR’s eviction, when the Appellee failed to prove that RMDR underpaid rent; and, 3. The district court erred in ordering RMDR’s eviction when the Court expressly found that the Appellee failed to prove that RMDR had any knowledge of alleged illegal activities on the-premises. Standard of Review: A trial court’s factual findings in an eviction matter are reviewed under the manifest error standard of review. Armstrong Airport Concessions v. K-Squared Rest., LLC, 15-0375, p. 9 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100-01 [citations omitted]. “Under a proper manifest error review, the analysis by the reviewing court should focus on whether there was clear error for lack of a reasonable basis in the conclusions of the factfinder.” Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592, p. 67 (La. 12/8/15), 193 So.3d 1110, 1150. However, legal questions, such as contractual interpretations, are reviewed under a de novo standard of review. Armstrong Airport Concessions, 15-0375, p. 9, 178 So.3d at 1101 [citations omitted]. inadequacy of RMDR’s Financial Records In its first assignment of error, RMDR argues that the Appellee failed to demonstrate the insufficiency of the financial records RMDR submitted such that there was a material breach of the Lease and/or Amended Lease. The evidence adduced at trial, it asserts, does not support the ■ Appellee’s claims for three reasons: •. since 2009, RMDR provided monthly reports to the Appellee, which did not complain as to the insufficiency of those monthly reports until almost six [6] years later, in October of 2014. Moreover, the Appellee did not complain about the signing of those monthly reports by the company’s accountant rather than an RMDR ..... .officer until it filed its petition, for eviction; • Mr. Motwani, on .the Appellee’s behalf, specifically told representatives for RMDR to stop sending the monthly financial records because it was costing him fees every time his attorney received and reviewed the financial records; and • RMDR “fully and adequately” responded to all of the Appellee’s demand for records, including arranging, in December 2014, for its records to be shipped from New Jersey to New Orleans so that the Appellee, and Ms. Sawyer, could review the records they. had requested for the years, of 2012-2014, RMDR avers that it subsequently provided Ms. Sawyer with all of its records, including Z tapes, daily sheets, bank, statements, receipts, cash flow statements, general ledgers, for the requested years. Moreover, it answered two questionnaires drafted by Ms. Sawyer. RMDR asserts that it substantially complied with the terms of the Lease and the Amended Lease. The Appellee failed to establish that RMDR’s financial records submissions. were inadequate; thus, according to RMDR, this claim cannot form a basis for eviction. 17Based upon our review of the testimony adduced at trial from Mr. Motwani and Ms. Sawyer, we find that RMDR’s arguments lack merit! First, Mr. Motwani testified that in 2009, attorneys representing the Appellee, requested that records be produced pursuant to the Lease via correspondence, He explained that he did not request records from RMDR from 2010 through October 2014 because of a family crisis. He testified that he was only receiving monthly income reports from RMDR, but he was not receiving a monthly statement signed by one of RMDR’s officers, attesting that the statement was true and correct, as required by the Lease and/or Amended Lease. Moreover, it is undisputed that the monthly income statements were being prepared George Carapella, who was not a CPA. Section 5.09 of the Amended Lease required that such statements be prepared by a CPA. The district court further noted that RMDR failed to comply with the Amended Lease when it did not produce monthly statements signed by an RMDR officer. Additionally, Mr. Motwani admitted at trial that he asked RMDR to cease sending the requested statements to his former counsel and to remit the statements with the rent directly to him. Thus, he was not requesting that RMDR stop sending the statements' altogether. Ms. Sawyer, who was accepted by the district court as an expert in accounting and auditing, testified as to the incompleteness of the records produced by RMDR. In her testimony, she explained that not all of the records that the Appel-lee requested were produced by RMDR. She explained that the general ledger was incomplete and that RMDR did not fully answer the questionnaire she composed in order to better understand how RMDR ran its business. Ms. Sawyer further opined that the irregularities she observed in RMDR’s records, including its general ledger, reflected a “systematic method that they [RMDR] have for not | «reporting all transactions and reporting complete and accurate records that’s [sic] required.” A major issue at trial was how much revenue RMDR generated. RMDR asserted that the majority of credit card transactions that occurred at its establishment were from cash advances to customers, not sales that would count as revenue. However, Ms. Sawyer and Mr. Theriot both testified that RMDR only produced two months- of receipts from November and December 2014. Jack Teitelbaum, the manager of Babe’s Cabaret, testified that the other receipts had been destroyed to protect customers’ information. However, section 5.07 of the Amended Lease required that these receipts be kept for three years. Considering the evidence and testimony adduced at trial, the district court had a reasonable basis to determine that RMDR breached the Lease and Amended Lease by submitting insufficient financial records to the Appellee. Furthermore, RMDR argues that pursuant to Morris v. Friedman, 663 So.2d 19, 25 (La. 1995), and Versailles Arms Apartments v. Pete, 545 So.2d 1193 (La. App. 4th Cir. 1989), the Appellee is precluded from raising the issue of the insufficiency of the financial records under the doctrine of equitable estoppel. It maintains that the Appellee is estopped from claiming that the monthly reports provided by RMDR’s accountant from 2009 until 2014 did not fulfill the obligations stated in the Amended Lease because the Appellee did not complain as to the insufficiency of those monthly reports until almost six years later, in October of 2014. The Appel-lee’s silence, RMDR argues, now precludes it from asserting that the monthly reports were insufficient as RMDR justifiably relied for many years, in good faith, upon the Appellee’s acceptance of the reports. RMDR | flcontends that the Appellee should not be permitted to repudiate its longstanding conduct. In Morris, the Louisiana Supreme Court defined equitable estoppel as: ‘the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such’ conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.’ John Bailey Contractor v. State, Dept. of Transp. & Dev., 439 So.2d 1055, 1059 (La.1983) (quoting American Bank and Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (1967)). This Court has further held that the three elements required for application of equitable estoppel are: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one’s detriment because of the reliance. Id. at 1059-60. However, a party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel. Id. at 1060. Further, estoppels are not favored in our law, and properly apply only as to representations of fact. State v. Mitchell, 337 So.2d 1186, 1188 (La.1976). Morris, 94-2808, pp. 8-9, 663 So.2d at 25-26. The facts presented in the instant matter do not satisfy all of the requirements for the application of this doctrine of last resort, under Louisiana law. Id. Specifically, RMDR cannot establish that it justifiably relied upon the Appellee’s conduct. As previously stated, Mr. Motwani testified that he requested records from RMDR prior to 2014. Also, RMDR’s alleged reliance was not justified, where pursuant to Section 16.1 of the Lease, the Appellee’s failure to insist upon-receiving the required documentation cannot be deemed a waiver: LESSOR may-treat any Event of Default as a breach of this Lease. LESSOR’S failure to insist upon strict performance of any covenant, term or condition of this Lease or to exercise any right or remedy it has herein shall not be deemed a waiver or relinquishment for the future of the LESSOR’S right to insist upon LESSEE’S \ ^strict performance of such covenant, term or condition. [Emphasis added.] As the First Circuit has explained, a lease contract is binding between the parties; and, as such, appellate courts are obligated to give legal effect to said contracts: The lease contract is the law between the parties in defining their respective legal rights and obligations. Carriere v. Bank of Louisiana, 95-3058, p. 8 (La. 12/13/96), 702 So.2d 648, 666. We are obligated to give legal effect to contracts according to the true intent of the parties. La. C.C. art. 2045; Alco Collections, Inc. v. Poirier, 95-2582, p. 6 (La. App. 1 Cir. 9/27/96), 680 So.2d 735, 740, writ denied, 96-2628 (La. 12/13/96), 692 So.2d 1067. Further, each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole. La. C.C. art. 2050. K & M Enterprises of Slaughter, Inc. v. Pennington, 99-0930, p. 3 (La. App. 1 Cir. 5/12/00), 764 So.2d 1089, 1091. When the “words of a- contract are clear, unambiguous, and lead to no absurd consequences, we may not look beyond the contract language to determine the true intent of the parties.” Rousset v. Smith, 14-1409, p. 6 (La. App. 4 Cir. 9/23/15), 176 So.3d 632, 637 (subsequent history omitted). RMDR failed to comply with' the terms of the Lease and/or Amended Lease, which terms further preclude it from asserting that the Appellee waived its rights to receive and-review the required records with the passage of time; This assignment of error is without merit. Underpayment of Rent RMDR asserts that the Appellee did not prove that RMDR underpaid rent in the amount of $605,822.91, as opined by Ms. Sawyer; therefore, it contends that it should not have been evicted. It contends that Ms. Sawyer’s opinion that RMDR Inunderpaid rent is based upon her belief that all credit card transactions were sales. The crux of RMDR’s argument is that it made cash advances, which are not sales; however, Ms. Sawyer erroneously included the cash advances in calculating RMDR’s sales. RMDR maintains that from 2012-2014, more than half of its $3,153,618 total credit card transactions were cash advances. According to RMDR, the true amount of RMDR’s underpayment of rent, $21,261.60, was discovered by Mr. Theriot during his review of financial records; and RMDR immediately issued a check in that amount, plus interest and penalties to the Appellee.[3] RMDR maintains that there was overwhelming evidence at trial presented as to the existence of cash advances given to customers via financial records and the testimony of three witnesses: Mr. Teitel-baum, Mr. Theriot, and Charles Bass, who is one of RMDR’s owners and the President of RMDR. .RMDR contends that the evidence at trial revealed that it had three revenue sources from 2012-2014: (1) bar sales; (2) occasional cover charges; and (3) usage, or rental fees from the entertainers in the dance areas. Its primary revenue source was from beverage sales. RMDR further explains that the entertainers performing at . the gentlemen’s club are independent contractors, who are not compensated by RMDR; rather they pay . RMDR a usage fee, or “rental,” for use of the dance area. Mr. Teitelbaum, the manager for Babe’s Cabaret, testified as to how the entertainers are paid. He explained that the entertainers are paid solely in cash by customers, who often have insufficient amounts of cash to pay the entertainers. He related that this issue is typical of what all Bourbon Street gentlemen’s clubs [ ^experience. Therefore, since 2009, RMDR has allowed customers to obtain cash advances on their credit cards. Mr. Bass testified that this practice is customary in gentlemen’s clubs because it is a cash business. Mr. Teitelbaum further related that for cash advances, the customer’s credit card and identification are copied and the transaction is ‘ run. If the credit card is not declined, the card and identification are taken to the manager, who makes further verifications prior to removing the money and handing it to an employee to deliver to the customer. He testified that this transaction is not' á sale as there is no guarantee how or where the customer will spend the money. Additionally, Mr. Teitelbaum explained that the cash advances can be traced by a review of the financial records, by identifying the terminal the transaction originated from and by visual inspection of the register tape, which has a different font and title line that distinguishes it from a.bar sale receipt. He testified that cash advances are given at a credit card terminal that is located in the dance area, an area from which no bar sales can be conducted. He further testified that, unlike bar receipts, a cash advance receipt also includes a large, round number, without an order number, tip or sales tax included. He maintains that the existence of cash advances can also be traced through the financial records, such as Z tapes, daily-reports, EVO statements and Slim CD records.[4] Mr. Teitelbaum, testified that a Babe’s Cabaret manager does obtain a copy of the credit card and a photo identification from every customer requesting a cash advance, but the records are destroyed, after six months to protect the customer’s personal information. 11sBy tracing the credit card transactions through the daily financial records of Babe’s Cabaret, RMDR asserts that Mr. Theriot was able to differentiate the credit card charges that were cash advances from those that were sales. Every item on the EVO statement, it avers, was accounted for as either coming through Slim CD or otherwise, and secondly, as coming directly from the credit card charges that were represented to be cash exchanges. RMDR maintains that Ms. Sawyer “simply based her assumptions on the flawed premise that RMDR did not make cash advances,” although she recognized that RMDR’s business is cash-driven and that the entertainers are paid in cash by customers. It further maintains that Mr, Ver-digets did not review Ms. Sawyer’s methodology and did not opine as to whéther she or Mr. Theriot was correct. RMDR contends that the Appellee offered no testimony at trial refuting RMDR’s position that cash advances have .occurred since 2009 on the premises, nor did they consult with others in the gentlemen’s club industry to determine whether cash advances are customary and whether a cash advance is considered a “sale.” The district court explained in its Reasons for' Judgment that RMDR’s failure to maintain and produce its records influenced the district court’s determination that RMDR also underreported its income: Even if RMDR, as a gentlemen’s club, does make cash advances to customers; [sic] RMDR’s failure to maintain and preserve full, complete and accurate books, records and accounts, for a three year period, including preserving the only source record evidencing “cash advances, i.e., the credit card receipts; its failure to have an authorized .officer of RMDR sign the monthly balance sheet and profit and loss statements, attesting to- their truth; its failure to produce complete annual financial statements prepared by a CPA, makes it virtually impossible to determine how much in cash advances |URMDR would have made during that three year period; The Court .finds that RMDR’s failure to maintain and preserve accurate books and records, including receipts, and failure to produce other financial records required by the lease were material breaches of the lease by RMDR. The Court further finds that plaintiff has met its burden of establishing, from all of the evidence submitted, that RMDR breached the lease by not accurately reporting income and thus, not paying the proper amount of rent each month. What the proper amount of rent for each month was, had to be determined from RMDR’s books and records; and RMDR failed to maintain, preserve, and produce complete and accurate books and records. The evidence does not support RMDR’s. argument that it processed as much or more money in cash advances than sales. Additionally, despite the large amount of cash that RMDR alleges it advanced to customers from 2012-2014, RMDR asserts that it made no profit from 2012-2013, and thus did not owe Mr. Motwani any percentage of profits for that period. The Court does not find that RMDR was in good faith in their actions. At trial, Ms. Sawyer testified that in reviewing RMDR’s records, she principally relied upon EVO statements that were from a third-party and reflected all credit card sales, as well as Z tapes that were being recorded, and daily sales sheets. She explained that she discovered large discrepancies between the Z tapes, which are sales that are being run through RMDR’s point-of-sale system, and the EVO statements. She explained that the Z tapes are an internal RMDR record as opposed to the EVO statements, which are produced from a credit-card processing company. The issue Ms. Sawyer .discovered was that the Z tapes “were only capturing about 15 percent of the credit card sales we saw on the EVO statements.” She also noted that both Mr. Bass and Mr. Theriot attested to the unreliability of the Z tapes, which she viewed as a red flag. Ms. Sawyer elaborated that she relied on EVO statements over the Z tapes because the EVO statements are a third-party document generated by an outside [^source for a fee. She explained that its reliability as an outside source is akin to a bank statement. She further explained that she conducted a review of the EVO transactions to determine if any were cash advances, but the records indicated that there were no cash advances, only sales. Ms. Sawyer’s testimony conflicted with that of Mr. Theriot, who testified that he was able to determine that cash advances were made based on the records produced by RMDR and his conversations with Mr. Bass and Mr. .Teitelbaum. He further testified that RMDR advanced over $1.77 million in cash to its customers from 2012 to 2014. Nevertheless, RMDR contends that it made no profit in 2012 and 2018. The district court had the discretion to determine upon which expert’s testimony-it would rely. “[WJhere there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Pelleteri v. Caspian Grp. Inc., 02-2141, p. 6 (La. App. 4 Cir. 7/2/03), 851 So.2d 1230, 1234-35 (citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)). “When evaluating expert opinions, the fact finder has broad discretion in determining the effect and weight to be given expert testimony. The fact finder can either accept or reject any or all of an opinion expressed by an expert.” Cooper v. Bouchard Transp., 12-0868, p. 6 (La. App. 4 Cir. 3/27/13), 140 So.3d 1, 7 (citations omitted). Additionally, “[i]t is within the trial court’s discretion to substitute common sense and judgment when such a substitution appears warranted upon the record as a whole.” McKenzie v. Cuccia, 04-0112, p. 6 (La. App. 4 Cir. 6/23/04), 879 So.2d 335, 339 (citation omitted). 11fiMoreover, as previously stated, RMDR’s destruction of receipts and other documents associated with the cash ad-vanees, led the district court to conclude that there was no evidence that any cash advances had occurred.[5] Both Mr. Theriot and Ms. Sawyer testified that none of the receipts produced reflected that there were cash advances and all of the produced receipts stated “sale.” Louisiana Civ. Code art. 2704 provides that “[i]f the lessee fails to pay the rent when due, the lessor may, in accordance with the provisions of the Title ‘Conventional Obligations or Contracts’, dissolve the lease and may regain possession in the manner provided by law.” Additionally, “[w]hen a party to the lease fails to perform his obligations under the lease or under this Title, the other party may obtain dissolution of the lease pursuant to the provisions of the Title of “Conventional Obligations or Contracts.” La, Civ. Code art. 2719. In light of the testimony discussed earlier in this opinion and the district court’s thorough Reasons for Judgment, we find that the district court did not err in concluding that RMDR breached the Lease and Amended Lease by underpaying its rent and, therefore, ordering its eviction from the Property. This assignment of error is without merit. Illegal Activities Allegations |17We pretermit discussion of RMDR’s final assignment of error—that the district court erred in ordering its eviction despite the Appellant’s failure to prove RMDR had any knowledge of alleged illegal activities on the premises. Addressing this assignment of error would not alter our finding that the district court did not err in determining that RMDR breached the Lease and Amended Lease in several manners. Consequently, we pretermit discussion of this assignment of error. Doctrine of Judicial Control RMDR asserts that this Court should invoke the doctrine of judicial control of leases and reverse the district court’s order of eviction. The doctrine of judicial control is an equitable doctrine by which , the courts will deny cancellation of the lease when the lessee’s breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact. Carriere v. Bank of La., 95-3058 (La. 12/13/96), 702 So.2d 648. The Second Circuit has further explained that “Louisiana courts are vested with discretion under certain circumstances to decline to grant a lessor cancellation of a lease although such right appears to be otherwise available to him.” KM, Inc. v. Weil Cleaners, Inc., 50,209, pp. 9-10 (La. App. 2 Cir. 1/13/16), 185 So.3d 112, 118 [citations omitted]. The court further expounded that “[c]ases which have applied judicial control of leases generally involve circumstances where a lessee had made a good faith error and acted reasonably to correct it.” Id. (citing Ergon, Inc. v. Allen, 593 So.2d 438 (La. App. 2d Cir. 1992)). RMDR avers that the evidence and testimony at trial showed that it complied with the terms of the Lease and the Amended Lease and that RMDR should not be evicted. It further maintains that even if there was a breach, the hsAppellee’s interest was not substantially impaired, and RMDR at all times operated in good faith. Nevertheless, based upon the testimony adduced at trial as to RMDR’s poor financial record keeping, consistent underpayment of rent and lack of compliance with submitting the required records to the Lessee, we do. not find that RMDR acted in good faith. Moreover, its breaches were not of minor importance as the cumulative effect of the breaches interfered with its payment of the accurate rental amount due to the Appellee for the duration of its tenancy and the breaches were caused by RMDR’s own failures. Thus, we decline to apply this doctrine. Peremptory Exceptions Pursuant to La. Code Civ. Proc. art. 2163,[6] RMDR filed peremptory exceptions of lack of justiciable controversy and no cause of action on appeal, asserting that as a result of the June 1, 2016 judgment of the district court, granting RMDR’s motion for suspensive appeal and requiring RMDR to deposit monthly rental payments of $25,000 into the registry of the court, any alleged default under the Lease was essentially cured by its payment of rent pursuant to the order.[7] Thus, according to RMDR, the payment of rent made the Appellee’s original claims moot and there is no longer a justiciable controversy. Alternatively, it avers that the Appellee no longer has a cause of action because the rental payments were being made. ImHowever, we note that there is no indication in the record that the Appellee accepted and/or received the monies RMDR deposited into the registry of the court prior to this Court dismissing RMDR’s suspensive appeal. Additionally,the Louisiana Supreme Court has explained that an exception of no cause of action is limited to a review of the petition: The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Ramey [v. DeCaire, 03-1299, p.], at 7 [ (La.3/19/04) ], 869 So.2d [114] at 118; Everything on Wheels Subaru, Inc. [v. Subaru South, Inc.], 616 So.2d [1234] at 1235 [ (La.1993) ] . No evidence may be introduced to support or controvert the exception of no cause of action. LSA-C.O.P. art. 931. The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Fink v. Bryant, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Ramey, at 7, 869 So.2d at 118. Scheffler v. Adams & Reese, LLP, 06-1774, pp. 4-5 (La. 2/22/07), 950 So.2d 641, 646. Considering that RMDR’s exception !of no cause of action is not based upon a defect in the Appellee’s petition and that there is ho proof that any monies deposited in the registry of the district court were received by the Appellee, we deny RDMR’s exceptions of no cause of action and lack of justiciable controversy. Answer to Appeal In' its Answer to Appeal, the Appellee asserts that RMDR allowed and/or permitted unlawful activity to take place at the leased premises. RMDR, the Appellee avers, violated various lease provisions requiring it to comply with laws and ordinances. Thus, the Appellee asserts that the district court erred in failing to | anfind that RMDR should have also been evicted for this violation. The Appellee- asserts that the district court erred by: 1) not finding that RMDR violated the Lease by allowing violations of law to occur at and through its business at the leased premises; and 2) not ordering the , eviction of RMDR due to its violation of the Lease for allowing violations of law to occur at and through its business at the leased premises. In the matter sub judice, the district court rendered a judgment and Reasons for Judgment. The judgment at issue states in pertinent part: IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of 429 Bourbon Street, LLC and against RMDR Investments, Inc., and therefore: IT IS FURTHER ORDERED, ADJUDGED AND DECREED 'that RMDR Investments, Inc., be, and the same is hereby evicted from the leased premises located at 429-433 Bourbon Street, New Orleans, Louisiana, 70130, and shall vacate and deliver possession of the said leased premises to plaintiff, no later than Monday, June 6, 2016 at 5:00 p.m. The judgment at issue grants the Appellee the relief requested, notwithstanding that in. the district court’s Reasons for Judgment it explained that it did not find a basis for evicting RMDR based on alleged illegal activities. A judgment and reasons for judgment are two separate and distinct documents. La. Code Civ. Proc, art. 1918. Appeals are taken from the judgment, not the written reasons for judgment. See La. Code- Civ. -P. arts. 2082, 2083[8] [other citations omitted]. See Greater New Orleans Expressway Comm’n v. Olivier, 02-2795, p. 4 (La. 11/18/03), 860 So.2d 22, 24. Moreover, even if a trial court’s reasons for |¾1 judgement “are flawed, but'the judgment is' correct, the judgment controls.” Dufresne v. Dufresne, 10-963, p. 6 (La. App. 5 Cir. 5/10/11), 65 So.3d 749, 754 (citing Premier Games, Inc. v. State, Dept. of Public Safety and Corrections, Video Gaming Division, 99-0624, p. 5, n. 4 (La. App. 1 Cir. 5/12/00), 761 So.2d 707, 711, n. 4 (citations omitted). Accord: Smith v. Smith, 08-575, p. 14 (La. App. 5 Cir. 1/12/10), 31 So.3d 453, 462). Considering that this Court has álready determined that the judgment-is not manifestly erroneous or clearly .wrong, we pre-termit discussion of this assignment of error. Denial of Ex Parte Motion to Release Continuing Suspensive Appeal Bond-Writ Application In writ application number 2017-C-0845, RMDR seeks review of the October 6, 2017 judgment of the district court denying its “Ex Parte Motion to Release Continuing Suspensive Appeal Bond.”- RMDR filed a motion for suspensive appeal in . the district court seeking this Court’s review of a judgment of, eviction in favor of the Appellee/Respondent. In the district court’s order of June 1, 2016, granting RMDR’s motion, the district court ordered that RMDR furnish security in the amount of $300,000 as well as ordering that RMDR deposit all future monthly-rental payments, in the. amount of $25,000 per month, into the registry of the Court “on or before the fifth day of each month” during the pendency of the suspensive appeal. Subsequently, however, the Appel-lee/Respondent filed a motion to dismiss RMDR’s appeal. On October 3, 2016, this Court dismissed RMDR’s suspensive appeal; however, this Court found that RMDR timely perfected a devolutive appeal, and thus, maintained the appeal as a devolutive one. RMDR thereafter filed an “Ex Parte Motion to Release Appeal Bond” wherein it moved the Court to laarelease the $300,000 cash bond that it posted. The motion was granted by the district court on October 24, 2016. On appeal, RMDR filed peremptory exceptions of lack of justiciable controversy and no cause of action, arguing that as a result of the district court’s June 1, 2016 judgment, ordering it to make the $25,000 monthly deposits in the registry of the Court, any alleged default under the Lease was cured. As previously discussed herein, this Court denies both exceptions. Following oral argument of the underlying appeal, RMDR filed its Ex Parte Motion to Release Continuing Suspensive Appeal Bond. RMDR contends that if the monies remaining in the remaining the registry of the district court are indeed bond payments, then the remaining sum is returnable to RMDR. We do not find that the district court erred in determining that the sum remaining in the registry of the court served as a rental payment and was a part of the suspensive appeal bond. In eviction matters, the district court has the discretion to set the amount of the suspensive appeal bond “in an amount sufficient to protect the appellee against all such damage as he may sustain as a result of the appeal.” La. Code Civ. Proc. art. 4735. Furthermore, in Lakewind E. Apartments v. Poree’, 629 So.2d 422, 423-24 (La. 4th Cir. 1993), we explained that a trial court generally must choose between two options when setting a suspensive appeal bond in eviction matters: In order to set a suspensive appeal bond sufficient to protect the appellee in this type of case, the trial court has two choices. One alternative would be to attempt to estimate the amount of time the case might be on appeal, then multiply that number of months times the rental price. The other alternative would be to do exactly what the trial judge did in this case and require the appellant to post the rental amounts as the rent becomes due. Under the circumstances, we believe that the trial court’s |Msolution was the most reasonable since it protects the interests of both parties. Thus, we hold that the requirement that the appellant post the monthly rental at the first of each month is a valid portion of the requirement that the appellant post a Suspensive appeal bond. The Lakemnd holding illustrates that where a district court orders an appellant taking a suspensive appeal from an order of eviction to deposit monthly rent into the registry of the court as it becomes due, the rental deposits form a part of the suspensive appeal bond.[9] Under the facts presented, we find that it would be untenable to return rental payments made as a part of the suspensive appeal bond to RMDR, which used the property for several months and, thus, precluded the Appellee/Respondent from using its property to generate income. Finding that the district court’s judgment is consistent with Lakemnd and that there is no abuse of discretion/manifest error, we deny the writ application of RMDR. DECREE For the foregoing reasons, the May 31, 2016 judgment of the district court is affirmed. The exceptions of lack of justicia-ble controversy and no cause of action of RMDR Investments, Inc. are denied. The Answer to Appeal of 429 Bourbon | MSt., LLC. is denied. Lastly, the writ application of RMDR Investments, Inc. is denied. AFFIRMED; EXCEPTIONS OF LACK OF JUSTICIABLE CONTROVERSY AND NO CAUSE OF ACTION DENIED; ANSWER TO APPEAL DENIED; WRIT DENIED . RMDR exercised one option to renew the Lease on January 1, 2011. The Appellee contested RMDR’s attempt to exercise the second option due to RMDR’s alleged breaches of the Lease and Amended Lease. The district court explained in its Reasons for Judgment that because RMDR was in default under the Lease prior to attempting to exercise the second option, it was precluded from exercising the second option. . RMDR filed a motion for suspensive appeal, which was granted by the district court. Subsequently, this Court dismissed RMDR’s sus- ■ pensive appeal; however, this Court found that RMDR timely perfected a devolutive appeal, and thus, maintained the appeal as a devolutive one, by an order dated October 3, 2016. . RMDR admits that due to a sales tax error it underpaid rent to the Appellee from 2012-2014. It maintains that it paid the Appellee a total of $29,585.45, including interest and penalties. . Mr. Teitelbaum provided the following definitions of the financial records: the "daily report” is a report of the cash sales and the credit sales, including bar sales, cover charges, if any, and dance floor usage, or rental fees, but does not list cash advances; "Z tapes” and "Slim CD” records only report bar sales from the terminal located in the bar 'area; thus, they do not include cash advances; and "EVO statements" include all of the credit card transactions, both bar sales and cash advances, . The district court noted in its Reasons for Judgment that on the third day of trial, RMDR attempted to introduce into evidence copies of credit cards and photo identifications made in 2014 from customers allegedly requesting cash advances. Excluding the documents and granting the Appellee's motion for adverse presumption, the district court reasoned that RMDR was engaging in trial by ambush and failed to timely produce the requested documents during discovery. , “The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.’’ La. Code Civ. Proc. art. 2163. , The June 1, 2016 order grantingithe Appel-lee's suspensive appeal, in addition to setting forth a $300,000 appeal bond, stated “all future payments of the monthly rent due in the amount of $23,000 pursuant to the Lease be paid into the registry of the Court on or before the fifth day of each month while this suspensive appeal is pending.” . An "[alppeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court.'’ La. Code Civ. Proc. art. 2082. "A final judgment is appealable, in all causes in which appeals are given by law, whether rendered after hearing, by default, or by reformation under Article 1814.” La. Code Civ. Proc. art. 2083(A). , The Lakewind court further explained on rehearing: ... as noted in our previous opinion, the requirement that the appellant deposit the rental monies into the registry of the court as each month’s rent becomes due is a special type of “continuing” suspensive appeal bond. This continuing obligation is the only reasonable solution for protecting the interests of both parties to an eviction case, while at the same time assuring that the requirements of La.C.C.P. art. 4735 that the appeal bond be “sufficient to protect the appellee against all such damage as he may sustain as a result of the appeal” are satisfied. Thus, the requirement is perfectly reasonable and logical. Id. at 424.