ARDENT SERVICES, LLC

VERSUS

G & V INVESTMENTS, LLC

NO. 23-CA-253

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 799-516, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

February 28, 2024

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Stephen J. Windhorst, and John J. Molaison, Jr.

**REVERSED IN PART;**
**AFFIRMED IN PART;**
**REMANDED**
    **SJW**
    **SMC**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ARDENT SERVICES, LLC
    Lawrence R. DeMarcay, III

COUNSEL FOR DEFENDANT/APPELLEE-2ND APPELLANT,
G & V INVESTMENTS, LLC
    Raymond B. Landry
    Thomas M. Flanagan
    Anders F. Holmgren
    Alixe L. Duplechain

**WINDHORST, J.**

In this appeal, plaintiff-appellant, Ardent Services, LLC, seeks review of the trial court's January 30, 2023 judgment, granting the motion for involuntary dismissal filed by defendant-appellee, G&V Investments, LLC and dismissing Ardent's claim against G&V. In addition, G&V filed a cross-appeal, seeking review of the trial court's February 9, 2023 judgment, denying its request for attorney's fees. For the following reasons, we reverse the trial court's judgment granting G&V's motion for involuntary dismissal and dismissing Ardent's claim against G&V, and remand for further proceedings. We affirm the trial court's judgment denying G&V's reqeust for attorney's fees.

**PROCEDURAL HISTORY and EVIDENCE**

On September 17, 2019, Ardent (Lessee) filed a petition for breach of lease agreement, to enforce lease agreement, and to mandate specific performance of the terms of the lease agreement agaisnt G&V.[1] According to the petition, on September 18, 2009, the parties entered into a "Commercial Build To Suit Lease" (the "Lease") relative to property located in Kenner, Louisiana. At all relevant times, the property was subject to a promissory note and mortgage in favor of Whitney National Bank, for which G&V was the mortgagor and borrower.

Pursuant to the lease, G&V (Lessor) was to complete certain improvements and/or a buildout on the property for Ardent. The parties agreed that the initial five-year lease term would commence upon completion of the improvements and buildout, and that Ardent had the option to renew for two additional five-year terms, as well as an option to purchase the property. The "option to purchase" gave Ardent the option to purchase during the term of the lease and any subsequent option term

---

[1] Ardent's claim for specific performance of the option to purchase appears to have been resolved prior to trial, and is not an issue in this appeal.

and provided that the "purchase price at any given time shall be that amount necessary to payoff [sic] in full the mortgage indebtedness."

With regard to monthly rent, Section 6(E) of the Lease provides:

> . . . The rental payment is fixed for the initial term of this lease at $7,706.13 per month [("monthly rent")]. The monthly rental payment is agreed to be the equivalent of the monthly debt service payment due by **Lessor** [to Whitney], i.e., the cash amount required monthly for the repayment of principal and fixed rate interest (currently six and one-half (6.500 %) per cent) constituting the mortgage indebtedness bearing against the property which is the subject of this lease, plus a **Lessor's** [G & V's] fee of eight (8.00%) per cent [sic] of that amount.... At the commencement of any option term, the monthly rental shall be adjusted for increase or decrease consistent with the current "market rate", i.e., the fixed rate of interest a company such as **Lessor** must pay to borrow funds, plus the **Lessor's** fee. [Boldface in original.]

In the petition, Ardent stated that it had paid the $7,706.13 monthly rent for the first term of the Lease and had continued to pay the monthly rent into the second term of the Lease as of the date of filing of the petition.

Pursuant to Section 6(E), the Lease provided for re-calculation of the monthly rental payments upon the commencement of each option term, in this case, March 21, 2015 and March 21, 2020. The pertinent language is as follows:

> . . . At the commencement of any option term, the monthly rental shall be adjusted for increase or decrease consistent with the current "market rate", i.e., the fixed rate of interest a company such as Lessor must pay to borrow funds, plus the Lessor's fee.

Section 6(G) of the Lease provided that Ardent "has the option of making the debt service portion of the monthly rental payment directly to the financial institution (Whitney National Bank) to which the indebtedness is owed." If Ardent paid the monthly rent to G&V, G&V was responsible for paying the full monthly rent (less G&V's eight percent fee) to Whitney to reduce the mortgage indebtedness against the property.

Under the Lease, Ardent also agreed to (1) pay all insurance, utilities and taxes; (2) "all costs connected with or arising out of the leased premises, and all other

expenses of every nature whatsoever, including but not limited to all repairs, excluding the building structure and roof. Ardent further agreed to maintain the premises in good and safe condition, including, "plate glass, electrical wiring, elevator, plumbing (even when damaged by freeze), heating, ventilation and air conditioning systems and any other system or equipment on the premises, with the exception of the building structure and roof which will be maintained by Lessor."

By letter dated May 1, 2019, Ardent notified G&V of its intent to exercise the option to purchase the property and provided a purchase and sale contract setting forth the terms by which it proposed to purchase the property. In response, G&V attempted to renegotiate the option to purchase. In May 2019, Ardent obtained information from Whitney dated May 21, 2019, identifying the principal balance on the indebtedness ("Indebtedness Balance") for the property as $660,854.82. Ardent determined that this amount was significantly higher than expected based on Ardent's records. Based on its records, Ardent determined that as of May 21, 2019, the Indebtedness Balance and the purchase price under the Lease should have been $552,974.21.

In its petition, Ardent alleged that G&V breached the Lease by failing to pay Whitney all monthly rent payments (less G&V's eight percent fee) that Ardent paid G&V. Specifically, Ardent claimed that G&V failed to pay Whitney $56,514.48, and that Ardent is entitled to a credit against the Indebtedness Balance. Ardent also alleged that G&V breached the Lease by failing to pass on to Ardent the decrease market rate resulting from G&V re-financing the Whitney mortgage for the property, which totaled is $51,366.13. Ardent claimed that it is also entitled to a credit against the Indebtedness Balance on this basis.

At a bench trial on January 17, 2023, Ardent called the following witnesses to testify: (1) Albert Vallotton III, an executive vice president at Ardent; (2) Jody Grass, the owner/manager for G&V; (3) James Heurtin, Jr., Ardent's chief financial officer.

Mr. Vallotton testified that the Lease was executed by Mr. Grass on behalf of G&V as the lessor and Dale Brem on behalf of Ardent as the lessee relative to a commercial/industrial office at 17 Veterans Boulevard, Kenner, Louisiana. Mr. Brem was a vice president and one of the co-founders of Ardent. Mr. Vallotton testified that the Lease term was for five years with options for two additional five-year terms. He confirmed that the Lease contained a provision stating that the "terms and payment schedules/calculations are to remain consistent throughout the lease to include the additional option terms" referred to the "underlying calculation for the lease amount during the additional terms."

Mr. Vallotton testified that the Lease included an option for Ardent to purchase the property, and that it was always the parties' intention for Ardent to eventually purchase the property. He stated that Ardent paid G&V $300,000.00 to secure the option to purchase.

Mr. Vallotton testified that the rent obligation for the first five years of the lease was calculated based on the amount due on G&V's loan for the property, plus an eight percent commission fee paid to G&V. Mr. Vallotton also testified that G&V was obligated to pass Ardent's monthly rent minus its eight percent fee directly to Whitney because the monthly lease payments were intended to reduce the Indebtedness Balance. He indicated that the parties intended for the monthly rent to reduce the Indebtedness Balance because the option purchase price was based on the full loan amount on the property with an additional eight percent fee to compensate G&V for its efforts as lessor. Mr. Vallotton confirmed that the monthly rent would be adjusted for increase or decrease at the commencement of an additional option term, and that the recalculated monthly rent would be the equivalent of the monthly debt service payment of the lessor, plus the eight percent Lessor's fee.

Mr. Vallotton testified that Ardent exercised its right to extend the lease through a second five-year term that began in March of 2020. He also stated that it

was his understanding that G&V had refinanced the loan with Whitney at a lower interest rate, but that G&V did not inform Ardent of the refinancing or pass along the changed rate or payment decrease to Ardent.

At trial, Mr. Grass, who owns G&V, testified as a G&V representative. Mr. Grass testified that he and Mr. Brem negotiated the Lease. Mr. Grass agreed that the Lease provided for adjustment of the monthly rent at the option term consistent with the then market rate, *i.e.*, the fixed rate of interest that the company, such as lessor, must pay to borrow funds plus the Lessor's fee. Mr. Grass was asked, "the provision says that the monthly rental shall be adjusted, correct? So if the rate went up they wouldn't have an option not to pay, correct?" Mr. Grass responded affirmatively, "[t]hat's correct." Mr. Grass indicated that Ardent would have had to pay whatever the interest rate was on the loan. Mr. Grass also agreed that it was reasonable for Ardent to assume that G&V was going to pay the Indebtedness Balance with the monthly rent payments G&V received from Ardent.

Mr. Grass testified that when G&V refinanced the loan in 2014-2015 on the leased property, G&V had twenty or thirty different notes and mortgages with Whitney that it was renewing at the same time. Mr. Grass indicated that he negotiated the new interest rate based on his credibility, his financial ability at the time, and G&V's assets.

Mr. James Heurtin, Ardent's chief financial officer, testified regarding the loan balance after Ardent's payments to G&V. He testified that in March of 2010, Ardent requested a report from Whitney as to the amount remaining due on the loan. Ardent obtained a report from Whitney, which detailed every loan transaction or payment, the amount allocated between principle, interest, interest deductions, fees, insurance payments, and insurance credits. Mr. Heurtin testified that the balance on the loan did not match Ardent's records as to the amount that should be due on the

loan. Mr. Heurtin stated that the amount due on the loan was $40,000.00 to $50,000.00 greater than Ardent's records indicated.

According to Mr. Heurtin, Ardent discovered that the discrepancy in the amount remaining due on the loan was due to the fact that G&V had refinanced the loan at a different interest rate, and that the amounts Ardent had been paying to G&V were not passed through dollar-to-dollar for the reduction of the principle and/or interest due on the loan. Mr. Heurtin confirmed that all payments Ardent made to G&V were intended to go directly to Whitney, except for Ardent's eight percent Lessor's fee.

After discovering the discrepancy in the amount due on the loan, Ardent protested the Indebtedness Balance due on the loan to G&V. Ardent continued to make the same monthly rent payments under the Lease until it purchased the property. Ardent's purchase of the property was delayed due to this dispute; however, by Act of Cash Sale and Conveyance dated November 12, 2020, Ardent purchased the property from G&V, subject to a reservation of rights to negotiate, settle, or litigate this lawsuit. On November 13, 2020, the parties cancelled the Lease and reserved their rights relative to this lawsuit.

After the presentation of Ardent's case at the bench trial, G&V moved for an involuntary dismissal of Ardent's claim against it. The trial court granted G&V's motion for involuntary dismissal, and dismissed Ardent's claim with prejudice.

Following trial, G&V filed a request for attorney's fees under the Lease. After a hearing, the trial court denied G&V's request for attorney's fees by judgment dated February 9, 2023.

**LAW and ANALYSIS**

On appeal, Ardent asserts the trial court erred in granting G&V's motion for involuntary dismissal because the Lease provides that G&V shall modify Ardent's monthly rent obligation upon commencement of each lease option term pursuant to

the financing costs incurred by G&V.  In a cross-appeal, G&V asserts that the trial court erred in denying its request for attorney's fees under the Lease.

**Ardent's Appeal**

A motion for involuntary dismissal is raised in a judge trial after the plaintiff has completed the presentation of his evidence. Chateau Homes by RJM, Inc. v. Aucoin, 11-1118 (La. App. 5 Cir. 05/31/12), 97 So.3d 398, 405, writ denied, 12-1526 (La. 10/12/12), 98 So.3d 872; Brock v. Singleton, 10-550 (La. App. 5 Cir. 03/29/11), 65 So.3d 649, 660, writ denied, 11-1216 (La. 09/23/11), 69 So.3d 1160. In this motion, a party may move for a dismissal of the action against him on the ground that the plaintiff has shown no right to relief based upon the facts presented and the law.  Pitre v. Jefferson Par. Hosp. Serv. Dist. No. 2, 16-361 (La. App. 5 Cir. 12/28/16), 210 So.3d 502, 507, writ denied, 17-150 (La. 3/13/17), 216 So.3d 802; Chateau Homes, 97 So.3d at 405; Zapalowski v. Campbell, 08-55 (La. App. 5 Cir. 06/19/08), 988 So.2d 772, 774-775.  In determining whether an involuntary dismissal should be granted after the plaintiff has completed the presentation of his evidence during a bench trial, the appropriate standard is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence. Pitre, 210 So.3d at 507; Chateau Homes, 97 So.3d at 405.

An appellate court should not reverse an involuntary dismissal under La. C.C.P. art. 1672 B in the absence of manifest error.  Pitre, 210 So.3d at 507.  Under the manifest error standard, the trial court's factual findings can be reversed only if the appellate court finds, based on the entire record, no reasonable factual basis for the factual finding and the fact finder is clearly wrong.  Cousin v. Cousin, 21-150 (La. App. 5 Cir. 12/23/21), 365 So.3d 784, 791.

"Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit

and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. "Generally, where the words of a contract are clear, explicit, and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol evidence." Gilbert v. Gottsegen, 14-593 (La. App. 5 Cir. 5/21/15), 171 So.3d 289, 294, writ denied, 15-1406 (La. 10/2/15), 178 So.3d 993. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. Derbes v. GBS Properties, LLC, 04-1460 (La. App. 5 Cir. 4/26/05), 902 So.2d 1109, 1111-12. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Id. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Id.

La. C.C. art. 2053 provides that "a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." Billiot v. Plambeck, 16-265 (La. App. 5 Cir. 12/21/16), 209 So.3d 379, 382. A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. Campbell v. Melton, 01-2578 (La. 5/14/02), 817 So.2d 69, 75.

The focus of the dispute in this case involves the interpretation of the following provision in Section 6(E) of the Lease:

> E. Upon acceptance by **Lessee** of the Building/Improvements, **Lessee** shall be obligated to pay monthly rentals due in advance on the first (1st) day of each month. The parties agree to prorate the initial

monthly payment as of the Commencement Date. The rental payment is fixed for the initial term of this lease at **$7,706.13** per month. The monthly rental payment is agreed to be the equivalent of the monthly debt service payment due by **Lessor**, i.e., the cash amount required monthly for the repayment of principal and fixed rate interest (currently six and one-half (6.500 %) per cent) constituting the mortgage indebtedness bearing against the property which is the subject of this lease, plus a **Lessor's** fee of eight (8.000 %) per cent of that amount. See annexed Exhibit "C". At the commencement of any option term, the monthly rental shall be adjusted for increase or decrease consistent with the then current "market rate", i.e., the fixed rate of interest a company such as **Lessor** must pay to borrow funds, plus the **Lessor's** fee. [Boldface in original.]

The trial court interpreted the last sentence of Section 6(E) to mean that an increase or decrease in monthly rent would depend on the market rate available to companies similar to G&V. The trial court concluded that Ardent was not entitled to the benefit of the reduced interest rate because Ardent did not introduce evidence of the market rate at the time of refinancing to establish that G&V's rate was the market rate available to similarly situated companies. In other words, the trial court found that Ardent was not entitled to G&V's refinanced interest rate because Ardent did not show that other similarly situated companies could have obtained the same rate G&V obtained at the time of refinancing. In reaching this conclusion, the trial court relied on G&V's assertion that the refinancing of this loan was a small part of a larger financial package which allowed G&V to obtain an interest rate not otherwise available on the financial market. For the following reasons, we disagree with the trial court's interpretation of Section 6(E).

First, Section 6(E) states, "[t]he monthly rental payment is agreed to be the equivalent of the monthly debt service payment due by Lessor, i.e., the cash amount required monthly for the repayment of principal and fixed rate interest (currently six and one-half (6.500 %) per cent) constituting the mortgage indebtedness bearing against the property which is the subject of this lease, plus a Lessor's fee of eight (8.000 %) per cent of that amount." This language expressly provides that the

monthly rent equaled the amount G&V owed each month for repayment towards the Indebtedness Balance, including principal and interest, which was six and one-half percent during the initial term of the Lease, plus the eight percent Lessor's fee. Thus, this language indicates that the parties intended for the monthly rent to be the same amount as G&V's financial obligation to Whitney towards the Indebtedness Balance plus the eight percent Lessor's fee for G&V's efforts.

Second, Section 2 of the Lease states, "[t]his lease is for a five (5) year term with options for two (2) additional five (5) year terms. Terms and payment schedules/calculations are to remain consistent throughout the lease to include the additional option terms." This provision reflects that the parties intended for the monthly rent, *i.e.*, payment schedules and *calculations*, to be calculated consistently throughout the Lease terms, including the two additional five-year option terms. Significantly, G&V's representative, Mr. Grass, testified that had the interest rate *increased* after refinancing of the loan, Ardent would have been obligated to pay the increased amount. Thus, an interpretation resulting in payments by G&V to Whitney of the monthly rental payments by Ardent, less G&V's eight percent fee, maintains consistency throughout the terms of the Lease.

Third, the terms of the Lease indicate that the parties intended for the eight percent Lessor's fee to constitute the entirety of G&V's compensation as lessor. No provision of the Lease suggests that G&V was to receive any additional payment or compensation. Thus, the express provisions of the Lease do not support G&V's assertion that it was entitled to keep any amounts from Ardent that were in excess of the reduced interest rate it obtained when it refinanced the loan.

Fourth, G&V's argument that the refinanced rate was not a "market rate" because G&V obtained the refinanced rate based on its credibility, relationship with Whitney, and the number of notes and mortgages G&V had with Whitney is without merit. This argument was based solely on a comment during the testimony of Mr.

Grass, a signatory to the lease, which, in the absence of factual support, was a conclusory and self-serving opinion. Mr. Grass was not accepted as an expert to provide testimony regarding the "market rate," nor was any testimony or other factual support offered upon which to base this conclusion.

Finally, the trial court's interpretation of the monthly rent calculation upon commencement of an optional term isolates and relies upon one sentence of the Lease to the exclusion of the other provisions of the Lease. La. C.C. art. 2050 provides that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." 429 Bourbon St., LLC v. RMDR Invs., Inc., 16-800 (La. App. 4 Cir. 11/15/17), 230 So.3d 256, 263, writ denied, 17-2054 (La. 2/2/18), 235 So.3d 1106. Taking into consideration all relevant provisions, the clear language of the Lease provides that the monthly rental payment was the equivalent of the "monthly debt service" payment due by lessor, G & V, (defined as the cash amount required monthly for the repayment of principal and interest constituting the mortgage indebtedness), plus G&V's lessor's fee of eight percent of that amount.

Moreover, for the price of $300,000.00, Ardent purchased an option to purchase the leased property at any time for the specified price of "that amount necessary to payoff in full of the mortgage indebtedness," as provided in Section 8. No payment in excess of the payoff of the full mortgage indebtedness due to Whitney was due.

Considering the above, we find that the trial court erred in interpreting the Lease to conclude that Ardent had to present evidence of the "market rate" in order for the monthly rent to be adjusted. We conclude that after presentation of its case, Ardent had established a right to relief based on the evidence presented and the law.

Accordingly, we find the trial court's granting of G&V's motion for involuntary dismissal was clearly erroneous, and therefore reverse the trial court's judgment granting G&V's motion for involuntary dismissal of Ardent's claim.

**G&V's Cross-Appeal**

G&V asserts the trial court misinterpreted Paragraph 37 of the Lease regarding attorney's fees. The trial court found that no provision of the Lease provided for the award of attorney's fees to G&V relative to this lawsuit.

Paragraph 37 of the Lease states:

> Should an attorney be employed to enforce any provision of this lease, or to assist in collection of the rents, **Lessee** shall pay as compensation for such legal services:
> i. an additional charge of twenty five (25%) percent of the claim, or
> ii. if the claim not be for money, a reasonable charge; but
> iii. in no event shall the amount of attorney's fees be less than $750.

As a general rule, attorney's fees are not allowed except when authorized by statute or contract. Hoffman v. 21st Century N. Am. Ins. Co., 14-2279 (La. 10/2/15), 209 So.3d 702, 707. Attorney's fees are not awarded to make the injured party whole, but rather to discourage a particular activity or activities on the part of the other party. Garden Lakes Condo. Homeowners Ass'n, Inc. v. Perrier, 10-1016 (La. App. 5 Cir. 5/24/11), 66 So.3d 1147, 1148.

Paragraph 37 clearly states that it applies when G&V employs an attorney "to enforce any provision of this lease, or to assist in the collection of rents." Applying this provision to the circumstances of this lawsuit, we find the trial court properly denied G&V's request for attorney's fees. G&V did not have to enforce any provision of the lease or collect any rent payments. Ardent paid all rent that was due under the Lease, and is seeking return of the excess amount it paid to G&V. There is no evidence or indication that Ardent did not comply with any term of the Lease.

Furthermore, we find that Paragraph 37 does not grant G&V recovery of attorney's fees when Ardent files suit against G&V for breach of the Lease and, more particularly, when Ardent asserts a viable claim against G&V. Paragraph 37 does not apply to the situation present here, in which G&V incurred attorney's fees to defend a valid claim by Ardent that G&V breached the Lease.

We therefore find no error in the trial court's denial of attorney's fees to G&V.

**DECREE**

For the above stated reasons, we reverse the trial court's January 30, 2023 judgment, granting G&V's motion for involuntary dismissal of Ardent's claim with prejudice. We affirm the trial court's February 9, 2023 judgment, denying G&V's request for attorney's fees. We remand this case for further proceedings consistent with this opinion.

<u>**REVERSED IN PART;**</u>
<u>**AFFIRMED IN PART;**</u>
<u>**REMANDED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 28, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-253

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
LAWRENCE R. DEMARCAY, III          ALIXE L. DUPLECHAIN (APPELLANT)          ANDERS F. HOLMGREN (APPELLANT)
(APPELLANT)                        THOMAS M. FLANAGAN (APPELLANT)
RAYMOND B. LANDRY (APPELLANT)

**MAILED**
NO ATTORNEYS WERE MAILED