hLEON A. CANNIZZARO, JR., Judge.
This is an appeal from a judgment rendered by the First City Court of New Orleans granting a rule for possession filed by the appellee, Terry Olivier, and ordering the appellant,- Mary Roland, to vacate the premises at 3613 Magazine Street, Apartment E. We affirm.
FACTS AND PROCEDURAL HISTORY
On July 26, 2001, Ms. Roland signed a written lease agreement' to lease Apartment F at 3613 Magazine Street from Ms. Olivier. The lease provided for a term of one year and a monthly rental of $385.00. Between August 1, 2001 and July 31, 2002, *999 Ms. Roland timely paid her rent. Sometime after July 31, 2001, Apartment E became available and Mrs. Olivier allowed Ms. Roland to move from Apartment F to Apartment E. Although the parties failed to sign a written lease for Apartment E, they orally agreed to a monthly rental of $510.00 due on the first day of each month.
bln August 2003, Ms. Roland was injured in an automobile accident and was unable to work for two months. On September 9, 2003, Ms. Olivier went to Ms. Roland’s apartment to collect the September rent, which had not been paid. At that time, Ms. Roland gave Ms. Olivier a partial payment of $340.00 and agreed to pay the remaining $170.00 at a later time. On September 18, 2003, Ms. Olivier gave Ms. Roland written notice to vacate the premises within 30 days for failing to pay the rent on time. When Mrs. Roland failed to pay the $170.00 balance of the September rent by September 29, 2003, Ms. Olivier sent her a five-day written notice to vacate the premises for non-payment of the rent. Ms. Roland refused to vacate the premises and, on October 7, 2003, Ms. Olivier filed a rule for possession seeking to evict Ms. Roland for non-payment of the $170.00 balance of the September rent.
Following a hearing on the rule for possession, the trial court rendered a judgment on October 15, 2003 ordering Ms. Roland to vacate the premises by October 20, 2003. Ms. Roland appealed.[1]
I «ASSIGNMENT OF ERROR
Ms. Roland asserts one assignment of error that encompasses several issues. Specifically, she contends the trial court erred by evicting her from the property for non-payment of rent when Ms. Olivier accepted partial rent for the month of September with no certain deadline for the payment of the balance. She also claims that the rule for possession was wrongfully granted considering the evidence that Ms. Olivier customarily accepted late and partial rent payments and never gave her advance notice before the September due date that the custom would no longer be acceptable.
LAW AND DISCUSSION
A lease is a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing at a fixed price. La. C.C. art. 2669. A lease may be made either by written or verbal contract. La. C.C. art. 2683. The duration and the conditions of a lease are regulated by contract or by mutual consent. La. C.C. art. 2684. If the renting of an apartment has been made without fixing its duration, the lease shall be considered to have been made by the month. La. C.C. art. 2685. If no time for its duration has been agreed on, the *1000 party desiring to end the lease must give written notice to the other party at least ten days before the expiration of the month, which had begun to run. La. C.C. art. 2686.
| ¿The lessee is bound to pay the rent at the terms agreed on. La. C.C. art. "2710. If the lessee fails to pay the rent when it becomes due, he may be expelled from the property. La. C.C. art. 2712. When the lessor has given notice to the lessee, in the manner and within the delays directed by law, to quit the property, and the lessee persists in remaining on the property, the lessor may have the lessee summoned before a judge and condemned to depart. La. C.C. art. 2713. Where time for performance of an obligation has not been specified or is uncertain, the obligation must be performed within a reasonable time. La. C.C. art. 1778.
The first issue to consider is whether the trial court wrongfully evicted Ms. Roland from the property for non-payment of rent when Ms. Olivier accepted partial rent for the month of September with no specific deadline for the payment of the balance.
The lease at issue was a verbal contract between Ms. Olivier and Ms. Roland. It was a month-to-month lease, with no fixed duration, requiring a ten-day written notice of termination to be given by the party wanting to terminate the lease. Although the verbal agreement required the monthly rent to be paid on the first day of each month, Ms. Roland had not paid the September rent as of September 9, 2003. When Ms. Olivier requested the September rent on that day and Ms. Roland responded that she could only pay a portion of it, Ms. Olivier had no choice but to accept the partial payment. The fact that she agreed to accept the balance at a later unspecified date is of no consequence. Since the parties did not specify a date the remaining $170.00 was to be paid, pursuant to La. C.C. art. 1.4778, Ms. Roland had to satisfy her obligation to pay the balance within a reasonable time. Nine days went by and Ms. Roland still had not paid the remaining $170.00. Thus, on September 18, 2003, pursuant to La. C.C. art. 2686, Ms. Olivier gave Ms. Roland written notice to vacate the premises for termination of the lease. Although Ms. Roland argues that a reasonable period of time for payment of the remaining rent had not lapsed on September 18, 2003, clearly a reasonable period of time had lapsed.by September 29, 2003, the day Ms. Olivier "served her with the five-day written notice to vacate for non-payment of the balance of the September rent.
Ms. Roland suggests that the September 18, 2003 notice to terminate was deficient because it did not specifically request the balance of the. September rent. We disagree. The fact that Ms. Olivier did not request the rent in the September 18, 2003 written notice to terminate is irrelevant. The verbal lease had no fixed duration; thus, the party desiring to terminate the lease, for whatever reason, only had to give the other party written notice of termination at least ten days before the expiration of the month, which Ms. Olivier did. Also, even though the September 18, 2003 written notice of termination gave Ms. Roland thirty days to vacate the premises, she was not excused from her obligation to pay the balance of the September rent within a reasonable time, nor was Ms. Olivier precluded from serving her with the September 29, 2003 five-day notice to vacate for non-payment of the September rent.
| ^Furthermore, we find no merit to Ms. Roland’s contention that Ms. Olivier’s agreement to accept the balance of the September rent at a later date modified the parties’ original verbal agreement rela *1001 tive to the September rent. If the parties had agreed to a specific date the remaining balance would be due, then, arguably, they would have modified their initial verbal agreement, but they never did so. In the absence of an agreed upon specific date, Ms. Roland was obligated to pay the balance within a reasonable time.
Next we address Ms. Roland’s argument that the trial court erred in granting the rule for possession considering the testimony that Ms. Olivier customarily accepted late and partial rent payments and had never given her advance notice prior to September that the custom would no longer be acceptable. In support of her argument, Ms. Roland cites Versailles Arms Apartments v. Pete, 545 So.2d 1193 (La. App. 4 Cir.1989).
In Versailles, the tenant was in a federal regulated rent assistance program and received her assistance check on the fifth of each month. Although the lease contract provided that the rent was to be paid on the first day of each month, the tenant consistently paid after the fifth day of the month. Eleven months into the lease, the landlord served the tenant with a ten-day notice of eviction after the fifth of the month and the trial court ordered the eviction. On appeal, we held the notice was insufficient because it did not comply with the specific term of the lease agreement that gave the tenant the opportunity to meet with the owner to discuss any proposed termination; the tenant was never afforded the meeting. In addition, |7we concluded that “it [was] inequitable to allow a lessor to mislead or lull a tenant into a false sense of security by accepting late rent payments for an extended period, without demand for punctuality, and then on a future date of his own choosing, cancel the lease for nonpayment of rent.” Versailles, 545 So.2d at 1195.
The Versailles case is clearly distinguishable from the present case and Ms. Roland’s reliance on it is misplaced. The lease in Versailles was a written lease that could be terminated only in accord with the U.S. Department of Housing and Urban Development regulations, state and local law, and the terms of the lease agreement. Here, the verbal, month-to-month lease allowed either party to terminate the lease without cause provided she gave the other party the required written notice at least ten days before the expiration of the month.
Also, in Versailles the owner consistently accepted the monthly rent late, knowing the tenant did not receive her monthly assistance check until the fifth day of the month. In this case, Ms. Olivier admitted to accepting late rent payments from Ms. Roland. However, contrary to Ms. Roland’s assertion, Ms. Olivier did not have a “long custom” of accepting partial and late rent payments. The record reflects that Ms. Olivier had been renting property to Ms. Roland since August 2001, and prior to September 2003, Mrs. Roland was late paying her rent only twice and, in both instances, she paid a late fee. Clearly, Ms. Olivier’s acceptance of two late monthly rent payments during the two-year period cannot be considered an established custom. Also, Ms. Olivier expressed her frustration with the late rent in the September 18, 2003 written notice of termination, stating she was “no | ^longer willing to chase [Ms. Roland] for rent.” Because Ms. Roland has not proven that a customary practice of remitting and accepting late rent payments existed between the parties, her argument that Ms. Olivier was required to give advance notice to terminate the custom is without merit.
Finally, we find no merit to the third issue raised by Ms. Roland that the trial court failed to exercise equitable dis *1002 cretion in canceling the lease for non-payment of rent. At the October 15, 2003 hearing on the rule for possession, Ms. Roland testified that she still had not paid the balance of the September rent.[2] In view of that fact, the trial judge explained that she had no choice but to grant Ms. Olivier’s rule. Based on the record, we cannot say the trial judge abused her discretion in rendering the judgment in favor of Ms. Olivier and against Ms. Roland.
Accordingly, for the reasons stated herein, the judgment of the First City Court of New Orleans is affirmed.
AFFIRMED.

. Ms. Roland timely filed a suspensive appeal from the October 15, 2003 judgment. On an ex parte motion by Ms. Olivier, the trial court recalled the suspensive appeal order and dismissed Ms. Roland’s appeal. Ms. Roland filed a supervisory writ to this court and sought a stay order. On October 27, 2003, this Court issued an order, staying the execution of the eviction and, on October 31, 2003, granted Ms. Roland's writ application, reinstated her suspensive appeal and lifted the stay. Ms. Roland remained on the premises until December 4, 2003, when she voluntarily moved. Ms. Olivier subsequently filed a motion to dismiss the suspensive appeal as moot. On January 13, 2004, we converted the sus-pensive appeal to a devolutive appeal. Following a show cause hearing, on June 14, 2004, we dismissed the devolutive appeal as moot because Ms. Roland was no longer living in the premises and had filed a separate suit against Ms. Olivier seeking damages for wrongful eviction. Upon Ms. Roland's application for rehearing, we reinstated her devol-utive appeal on June 25, 2004.

. It is undisputed that Ms. Roland remained in the premises until December 4, 2003, yet never paid the balance of the September rent or the rent due for October, November, and the first four days of December 2003.