**NUCCIO FAMILY, LLC**               *           **NO. 2020-CA-0659**

**VERSUS**                     *

                                 **COURT OF APPEAL**

**COOTIES CORPORATION**     *

                                 **FOURTH CIRCUIT**

                     *

                                 **STATE OF LOUISIANA**

                  **\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-06983, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
\* \* \* \* \* \*
**Judge Terri F. Love**
\* \* \* \* \* \*

(Court composed of Judge Terri F. Love, Judge Daniel L. Dysart, Judge Regina
Bartholomew-Woods)


Albert J. Nicaud
NICAUD & SUNSERI LAW FIRM, L.L.C.
3000 18th Street
Metairie, LA 70002

Jeffrey M. Siemssen
NICAUD & SUNSERI LAW FIRM, L.L.C.
3000 18th Street
Metairie, LA 70002

Bret D. Guepet, Jr.
NICAUD & SUNSERI LAW FIRM, L.L.C.
3000 18th Street
Metairie, LA 70002


      COUNSEL FOR PLAINTIFF/APPELLEE


Thomas J. Barbera
BARBERA LAW FIRM
4645 Carthage Street
Metairie, LA 70002


      COUNSEL FOR DEFENDANT/APPELLANT

TFL

DLD

RBW

This appeal arises from a judgment of eviction for a commercial property located at 418 Bourbon Street and operating as a restaurant and bar. In January of 2017, Cooties Corporation began to lease the property from Nuccio Family, LLC. Over three years later, Cooties Corporation failed to timely pay rent due in April, 2020. Nuccio Family, LLC threatened eviction proceedings if the outstanding rent was not paid in full. Thereafter, Cooties Corporation made partial payments in May, June, and July of 2020. After a final warning in July, Nuccio Family, LLC, filed a rule to show cause for eviction, possession of premises, and request for expedited hearing against Cooties Corporation. After a hearing, the trial court ordered that Cooties Corporation be evicted from the property. Cooties Corporation now appeals this judgment.

Upon review, we find that the trial court did not err in granting the eviction against Cooties Corporation for failure to pay rent, as (1) the lease contract was not modified in any manner; (2) there was no custom of accepting late payments that altered the lease terms or caused Nuccio Family, LLC to be waived from strictly enforcing the lease; and (3) the doctrine of judicial control is not applicable to these circumstances. Accordingly, the trial court's judgment is affirmed.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 19, 2017, Cooties Corporation, represented by its President, Guy W. "Trey" Olano, III, and Nuccio Family, LLC, appearing through its authorized Member/Manager, Lena Nuccio, executed a lease agreement for 418-418 ½ Bourbon Street, New Orleans, Louisiana. On April 22, 2020, Ms. Nuccio, on behalf of Nuccio Family, LLC, sent a demand letter to Mr. Olano stating that Cooties Corporation was in default of the lease due to a failure to pay the rent due April 1, 2020. The letter noted that Mr. Olano had stated on April 2, 2020, that he was unable to pay the rent due April 1, 2020, but that he would keep Nuccio Family, LLC apprised on the status of various types of assistance he was applying for due to the onset of the COVID-19 pandemic. The letter then stated that Nuccio Family, LLC had never received any update from Mr. Olano, that a late charge would now be applied to the rent, as provided for in the lease, and that a second late charge plus interest would be assessed if the rent was not received within five business days of the date of the letter. Lastly, the letter stated that should the full rent not be received within five business days, Nuccio Family, LLC would consider the lease terminated and request that Cooties Corporation vacate the premises. Cooties Corporation proceeded to make four partial payments in May, June, and July. In the interim, the parties corresponded via text and email, but did not reach an agreement verbally or in writing regarding a reduction of rent to be paid during the pandemic.

2

On July 23, 2020, Nuccio Family, LLC, through its attorney, sent a certified letter to Mr. Olano as notice of the need to correct three types of lease violations. The letter advised that Cooties Corporation was in default and pursuant to the lease, had five days to correct violations of nonpayment of the rent, violations in regard to building access, and violations identified by the Vieux Carre Commission ("VCC"). In listing the violations of the lease due to nonpayment of rent, Nuccio Family, LLC imputed the four partial payments made in May, June, and July to the April, May, and June rent. However, even after imputing those four partial payments, $16,903.11 was outstanding for the May rent, $20,385.12 was outstanding for the June rent, and $20,385.12 was outstanding for the July rent. Mr. Olano was advised that payment of a total of $58,293.67 by July 31, 2020, would fulfill the outstanding balance, plus interest. The letter warned that a failure to pay that balance by July 31, 2020 would result in Nuccio Family, LLC taking steps to remove Cooties Corporation from the premises.

The second type of violation noted related to a failure to provide access to the building. The lease terms gave Nuccio Family, LLC the right to walk through the premises with twenty-four hours of notice to Cooties Corporation. On July, 8, 2020, Nuccio Family, LLC requested a walk-through of the premises. The letter noted that when the request was made, Mr. Olano stated that he was on his way to Florida and would see who was available to open the premises. However, two weeks later, Nuccio Family, LLC still had not heard back from Mr. Olano regarding access and the walk-through never took place. The letter notified Mr.

3

Olano that if the lack of access was not corrected by July 31, 2020, necessary steps would be taken to remove Cooties Corporation from the premises.

The third type of violation identified a case instituted by the VCC related to poor building maintenance and called for Cooties Corporation to conduct repairs and maintenance within a reasonable time period. Failing that, Nuccio Family, LLC would undertake corrective measures and hold Mr. Olano personally liable for the cost of such measures, plus interest.

Cooties Corporation did not pay the remaining balance by July 31, 2020, although it did make one final partial payment on August 10, 2020. On August 12, 2020, Nuccio Family, LLC filed this eviction proceeding. A hearing followed on September 18, 2020. The trial court issued a judgment ordering eviction on September 22, 2020. That judgment also awarded attorney's fees in the amount of $3,000.00 and court costs of $664.00 to Nuccio Family, LLC. On October 1, 2020, Appellant filed this timely suspensive appeal.

## DISCUSSION

### *Standard of Review*

In analyzing the judgment of a trial court in an eviction case, the appellate court reviews factual findings under the manifest error standard of review. *Armstrong Airport Concessions v. K-Squared Restaurant, LLC*, 15-0375, p. 9 (La. App. 4th Cir. 10/28/15), 178 So. 3d 1094, 1100. "Under a proper manifest error review, the analysis by the reviewing court should focus on whether there was clear error for lack of a reasonable basis in the conclusions of the factfinder."

4

*Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 67 (La. 12/8/15), 193 So. 3d 1110, 1150. This standard precludes the appellate court from setting aside the trial court's factual finding unless that finding "is clearly wrong in light of the record reviewed in its entirety". *Hayes*, 14-2592, p. 8, 193 So. 3d at 1115. "However, if the trial court makes one or more prejudicial legal errors that poisoned the fact-finding process which produced an erroneous result, then, a manifestly erroneous judgment must be reviewed under the de novo standard." *200 Carondelet v. Bickham*, 17-0328, p. 4 (La. App. 4th Cir. 10/25/17), --- So. 3d ----, ----, 2017 WL 4803954, *2 (unpublished). Under the *de novo* standard, questions are reviewed without deference to the legal conclusions of the trial court. *Cleco Evangeline, LLC v. Louisiana Tax Com'n*, 01-2162, p. 3 (La. 4/3/02), 813 So. 2d 351, 353.

### *Assignments of Error*

Appellant argues that the trial court erred in three respects: (1) in holding that the agreement modifying the lease had to be in writing; (2) in refusing to hold it inequitable to allow a lessor to mislead or lull a tenant into a false sense of security by accepting late rent payments for an extended period; and (3) in failing to determine that where the lessor customarily accepted late rental payments, such custom has the effect of altering the original contract with respect to punctuality of rent payments, or in failing to determine that in such cases, the landlord's right to strict enforcement of the lease rental provisions is considered to have been waived.

### 1) **Assignment of Error #1**

Appellant's first assignment of error states that the trial court erred in holding that the agreement modifying the lease had to be in writing. This raises a legal question that would normally be subject to a *de novo* review. *200 Carondelet*, 17-0328, p. 4, --- So. 3d at ----, 2017 WL 4803954, *2. However, the judgment itself is devoid of any language stating that lease modifications must be in writing. The Appellant's statement that this issue forms part of the trial court's holding relies solely on a remark made by the trial court judge to Appellant's counsel during his direct examination of Mr. Olano.

Oral statements by a trial court judge form no part of the court's judgment and appellate courts review judgments, not reasons for judgments. *Wooley v. Lucksinger*, 09-0571, 09-0584, 09-0585, 09-0586, p.77 (La. 4/1/11), 61 So. 3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 07-1335, 07-1399, p.25 (La. 4/18/08), 980 So. 2d 654, 671). "Judgments are often upheld on appeal for reasons different than those assigned by the district judges." *Id.* In this case, Appellant points to an oral statement by the trial court judge as part of the holding. The statement took place during direct examination of Mr. Olano by Appellant's counsel. After noting that the counsel's line of questioning was not advancing his case and that he needed to prove that a modification of the lease took place, the trial court judge stated "let's get to where it shows something in writing that they did that." The counsel responded that there is no requirement that a lease modification be in writing. The trial court judge readily acknowledged this, next stating "let's get to some proof of it." The trial court judge then allowed a line of

6

questioning to proceed in which Appellant's counsel attempted to prove that a modification took place through an oral agreement or by implication. The abbreviated initial remark by the trial court judge during a back-and-forth exchange does not indicate that the trial court judge believed that leases can only be modified in writing. The fact that the trial court judge also allowed a line of questioning probing the existence of an oral modification or modification by implication further demonstrates that the trial court judge acknowledged that leases may be modified by other means. However, even if the trial court judge did believe that leases can only be modified in writing and did so state, these oral statements form no part of the judgment.

Nonetheless, Appellant contends that the trial court erred in granting the eviction and suggests that the lease was modified. Under La. C.C. art. 2704, if the lessee fails to pay rent when due, the lessor may dissolve the lease and regain possession of the premises. When a lessee's right of occupancy has ceased because of nonpayment of rent, the lessor "shall cause written notice to vacate the premises to be delivered to the lessee." La. C.C.P. art. 4701. Appellant does not object to the procedural sufficiency of the eviction, nor does Appellant dispute that it did not pay the rent amounts specified in the lease. Rather, Appellant asserts that in accepting partial payments past the due date, the lease was modified.

Appellant is correct that oral modification of contracts are permissible and enforceable under the law. *Lawson v. Donahue*, 313 So. 2d 263, 265 (La. App. 4th Circ. 1975). It is also true that contract modifications can be accepted by

implication, silence, or inaction. *Alliance Mfg. Co. v. Foti*, 146 So. 2d 464, 466 (La. App. 4th Circ. 1962). However, here, it is apparent that no modification of the lease occurred. Appellant's President conceded, during direct examination, that no new written or verbal agreement was made in regards to rent during the COVID-19 pandemic. Furthermore, Appellee was far from silent or inactive on the matter of accepting late rent payments. Appellee used precise language in a certified letter to express that it was not accepting late partial payments as lower rent payments, but instead imputing these payments to the rent of earlier months, as permitted under *Marks v. Deutsch Const. Co*. *Marks v. Deutsch Const. Co.*, 258 So. 2d 676, 678 (La. App. 4th Circ. 1972). Lastly, Appellee notified Appellant that it would pursue eviction proceedings if full payments were not expeditiously made, and provided Appellant with sufficient notice under the statute. La. C.C.P. art. 4701. Therefore, the lease was not modified.

As the lease was not modified and there was a reasonable factual basis for the trial court's judgment of eviction, this assignment of error is without merit. The trial court did not commit manifest error in granting eviction due to nonpayment of rent.

**2) Assignment of Error #2**

Appellant's next assignment of error is that the trial court erred in refusing to hold it inequitable to allow a lessor to mislead or lull a tenant into a false sense of security by accepting late rent payments for an extended period. Appellant asserts that the trial court committed prejudicial legal error in not applying these equity

8

considerations to the case and finding favorably for Appellant, requiring *de novo* review. *200 Carondelet*, 17-0328, p. 4, --- So. 3d at ----, 2017 WL 4803954, *2. However, the record is devoid of any information to show that the trial court made a particular finding regarding equity. The trial court judge stated that the eviction was to be granted "purely on the fact that the rent was not paid." The genuine issue at hand is whether the trial court's decision to order eviction on the basis of nonpayment of rent was "reasonable in light of the record, reviewed in its entirety". *Sistler v. Liberty Mut. Ins. Co.*, 558 So. 2d 1106, 1112 (La. 1990).

The general rule is that where a lessor customarily accepts late rental payments, "such custom has the effect of altering the original contract with respect to punctuality of rent payments" and the landlord waives their right to strict enforcement of the lease terms. *Versailles Arms Apartments v. Pete*, 545 So. 2d 1193, 1195 (La. App. 4th Cir. 1989). The basis for that rule is that it would be "inequitable to allow a lessor to mislead or lull a tenant into a false sense of security by accepting late rent payments for an extended period, without demand for punctuality, and then on a future date of his own choosing, cancel the lease for nonpayment of rent." *Id*. In *Versailles*, the landlord accepted late payments on a monthly basis from a particular tenant for nearly a year, and then moved to evict the tenant. This Court rendered judgment in favor of the tenant, finding that the landlord's regular acceptance of these late payments for several months altered the contract and amounted to a waiver of its right to strictly enforce the lease.

9

In this case, Appellee did not have a custom of accepting late payments without demand for punctuality. After three weeks passed without receiving rent for April, Appellee demanded overdue rent, including a late charge, warned of further late fees and threatened eviction proceedings if the rents were not received within five days. Although partial payments were accepted over the next three months, Appellee delivered a certified letter advising Appellant that these payments were being imputed to the April, May, and June rent. That letter also stated that failure to pay the existing balance by July 31, 2020 would result in Appellee taking steps to remove Appellant from the premises. These circumstances provide a strong contrast with the situation in *Versailles*. Here, Appellant was on notice from the first missed payment that eviction would be pursued if the rent was not paid in full. Furthermore, Appellee made clear that subsequent payments were being imputed to the earlier months' rents, and not accepted as payments for each subsequent month. Given the unequivocal language repeatedly used by Appellee demanding punctual payments and forewarning Appellant of eviction proceedings, it is clear that Appellant was not lulled "into a false sense of security" as contemplated in *Versailles*. *Id*.

Thus the rule enumerated in *Versailles* does not apply to the present case, and, as previously discussed, there was a reasonable factual basis for the trial court's judgment of eviction. Therefore, the trial court did not commit manifest error in granting eviction on the basis of nonpayment of rent.

**3) Assignment of Error #3**

Appellant's third assignment of error states that the trial court erred in failing to determine that where the lessor customarily accepted late rental payments, such custom has the effect of altering the original contract with respect to punctuality of rent payments. Appellant alternatively argues that the trial court erred in failing to determine that in such cases, the landlord's right to strict enforcement of the lease rental provisions is considered to have been waived. Appellant suggests that the trial court committed prejudicial legal error in not applying these legal doctrines to the case, requiring this Court to conduct a *de novo* review. *200 Carondelet*, 17-0328, p. 4, --- So. 3d at ----, 2017 WL 4803954, *2. Again, the trial court judge stated only that the eviction was to be granted "purely on the fact that the rent was not paid." No particular determination was made by the trial court regarding whether the acceptance of late payments altered the original contract or waived Appellee's right to strictly enforce the lease. The issue therefore is whether the trial court's decision to order eviction was reasonable in light of the record, viewed in its entirety. *Hayes*, 14-2592, p. 8, 193 So. 3d at 1115.

A lessor's customary acceptance of late rental payments has the effect of altering the original contract with respect to punctuality of rent payments. *Versailles*, 545 So. 2d at 1195. "In such cases the landlord's right to strict enforcement of the lease rental provisions is considered to have been waived." *Id*. However, the question of whether the Appellee had a custom of accepting late rent payments has already been answered, in the negative, in the previous section.

11

Appellee did not have a custom of accepting late payments, demanded overdue rent, and imputed late payments to previous rents due. Appellee delivered two letters to Appellant stating as much, and warned Appellant of its intent to pursue eviction proceedings in the event of continued nonpayment of the rent. Due to these distinguishing factors, the trial court was correct in not applying *Versailles* to the case at hand.

The present case more closely resembles the situation in *Olivier v. Roland*, where this Court affirmed an eviction after a lessor accepted two late monthly payments out of a two year period. *Olivier v. Roland*, 03-1988, p.8 (La. App. 4th Cir. 11/3/04), 888 So. 2d 998, 1002. We stated that "acceptance of two late monthly rent payments during the two-year period cannot be considered an established custom." *Id.*, 03-1988, p.7, 888 So. 2d at 1001. Additionally, the late payments made by the lessee in *Olivier* included late fees. *Id.* Similarly, here, Appellant was assessed late fees, and was derelict in four payments over the course of a three-year lease. When the fifth month arrived and payment was still not made in full, Appellee immediately pursued eviction proceedings.

Appellant additionally argues that a lessor's right to dissolve a lease on the failure to pay rent is subject to judicial control, according to the circumstances. *429 Bourbon Street, LLC v. RMDR Investments, Inc.*, 16-0800, 17-0845, p.17 (La. App. 4th Cir. 11/15/17), 230 So. 3d 256, 267. "The doctrine of judicial control is an equitable doctrine by which the courts will deny cancellation of the lease when the lessee's breach is of minor importance, is caused by no fault of his own, or is

12

based on a good faith mistake of fact." *Id.* In *429 Bourbon*, this Court declined to apply the doctrine of judicial control because the lessee consistently underpaid rent and did not comply with submitting required records. This Court cited to *Ergon, Inc. v. Allen,* a Second Circuit case holding that judicial control of leases can generally be applied where a lessee made an error in good faith error and acted reasonably to correct that error. *Id.*; *Ergon, Inc. v. Allen*, 593 So. 2d 438, 440. In *Ergon*, a mineral lessee was unaware that it was delinquent in paying rent. Upon notification of its delinquency, the mineral lessee immediately attempted to tender payment. Without ever demanding the delinquent rent, the lessor commenced eviction proceedings. In exercising judicial control to not order eviction, the court emphasized the lessee's good faith, the unusual circumstances, and the "overwhelming effects" eviction would have on the mineral lessee and its consumers. *Ergon*, 593 So. 2d at 440-41.

This line of cases differs substantially from the instant case. Here, Appellant was fully aware that payments were past due and failed to provide promised updates on future payments. Appellant's President avoided communication with Appellee on numerous occasions, even denying Appellee access to the premises, in contravention of the lease terms. This pattern of behavior does not resemble the good faith of the lessee in *Ergon*. Neither do the actions of Appellee, which gave prompt notice of the lease violations and afforded Appellant an opportunity to pay outstanding rent and avoid eviction, embody the bad faith exhibited by the lessor in that case. The instant case is more akin to *429 Bourbon*, due to Appellant's

noncompliance with other elements of the lease and full awareness of its delinquency. Therefore, the trial court had a reasonable basis for not applying the doctrine of judicial control and did not commit manifest error in granting eviction.

Reviewing the record in its entirety, it is clear that there was no custom of Appellee accepting late payments, the contract was never altered with respect to punctuality of rent payments, and Appellee did not waive its right to strictly enforce the lease. There was a reasonable factual basis for the trial court's judgment and the trial court did not commit manifest error in granting eviction on the basis of nonpayment of rent.

## CONCLUSION

For the reasons set forth above, we find that the trial court did not err in granting the eviction against Appellant for failure to pay rent. Accordingly, this judgment is affirmed.

**AFFIRMED**

14