| ROSENBLAT PROPERTIES, LLC | * | NO. 2024-CA-0216 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| SHWETA KOHSMANN | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2024-00410-F, SECTION "B"
Honorable Elroy A James, Judge
\* \* \* \* \* \*
**Judge Karen K. Herman**
\* \* \* \* \* \*
(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins,
Judge Karen K. Herman)


Jacob Kansas
LAW OFFICE OF JACOB KANSAS
1801 Carol Sue Avenue
Gretna, LA 70056


     COUNSEL FOR PLAINTIFF/APPELLEE


Shweta Kohsmann
131 Decatur Street
New Orleans, LA 70130


     COUNSEL FOR DEFENDANT/APPELLANT, *Pro Se*


       **AFFIRMED; ANSWER TO APPEAL DENIED**
       **NOVEMBER 26, 2024**

This is an eviction proceeding. Appellant-Defendant, Shweta Kohsmann ("Defendant), appearing *pro se*, appeals the trial court's February 15, 2024 judgment, which denied her affirmative defenses and granted the rule for possession filed by Appellee-Plaintiff, Rosenblat Properties, LLC ("Plaintiff"). Plaintiff also answered the appeal requesting an award of court costs and attorney's fees as well as frivolous appeal damages.

For the following reasons, we affirm the trial court's judgment and decline Plaintiff's request for costs, attorney's fees, and frivolous appeal damages.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 11, 2022, Henry Rosenblat ("Rosenblat"), the manager and owner of the Plaintiff company, and Defendant entered into a written agreement to lease Unit 9 of 4007 Prytania Street. The lease commenced May 15, 2022, and expired on May 31, 2023. The lease also provided that rent in the amount of $1,015 was due on the first of each month. It further stated that a late fee of $35 must accompany rental payments received after the first of the month; that the late fee would increase to $50 and $100, on the fifth and tenth of the month, respectively.

On May 4, 2023, Rosenblat advised Defendant via text message that the price of rent would be increasing to $1,060 a month. Defendant acknowledged receipt of the message the same date.[1]

On December 4, 2023, Plaintiff issued a notice to vacate the premises for non-payment of rent, which was posted on the door of Defendant's apartment.

On January 19, 2024, Plaintiff filed a rule for possession of the premises to evict Defendant from the leased property, alleging she failed to pay rent for September 2023, October 2023, December 2023, and January 2024, totaling $5,300. Plaintiff attached the lease and the notice to vacate to the petition.

On February 15, 2024, Defendant filed an answer and affirmative defenses to the rule for possession, wherein she alleged Plaintiff established a custom of accepting late payments and that the notice to vacate and rule for possession contain inconsistent allegations. Plaintiff also alleged as an affirmative defense that she made good faith efforts to comply with the terms of the lease and that the trial court should exercise judicial control and not terminate her lease. As exhibits, Defendant included screenshots of text messages between Plaintiff and Defendant.

The matter came for hearing on February 15, 2024.[2] At the hearing, the trial court first addressed the affirmative defenses and then proceeded with the eviction.

---

[1] Rosenblat texted Defendant that rent would be increased by $45 a month effective June 1, 2023, and to "confirm that you received this [message,] by replying." Defendant responded: "ok" and "I received it."

[2] Defendant was represented by counsel at the time of the hearing. However, at the beginning of the hearing, Defendant, *pro se,* orally moved to disqualify Plaintiff's counsel and asserted various claims/defenses, including malicious prosecution, fraud and misrepresentation, and bad faith. The trial court denied the motion to disqualify. The trial court also indicated that it was too late to raise these defenses at the eviction proceeding and that Defendant had other avenues to pursue her claims.

The following testimony was adduced during the affirmative defense portion of the hearing:

Defendant identified screenshots of text messages between the parties. She testified there was an agreement concerning the payment of September 2023 rent. Defendant stated when Rosenblat messaged her when to expect September's rent, Defendant responded on August 29, 2023, that she would be able to pay $600 on September 13 and the remaining balance on October 3 or 4. Defendant testified that based on their communications, Rosenblat was aware that she would be unable pay her September 2023 rent timely. She also claimed that the fact Rosenblat texted her regarding when he should expect the rent showed there was a custom of accepting untimely rental payments. Defendant stated after she texted Robsenblat about her proposed payment plan he did not respond for several days. They then exchanged text messages over a broken air conditioner. Defendant stated that when she did not hear from Rosenblat immediately regarding her suggestions over September rent payment, she assumed he agreed to her proposal. However, on September 7, 2023, Rosenblat responded he "just" read her August 29, 2023 text message and that the payment plan did not work for him. Defendant testified that Rosenblat also texted "if you miss any of the dates you promised rent to me I will not accept it." She stated that this statement implied that Rosenblat would accept the late rental payments for September 2023 as long as she "paid on the days that [she] promise[d] to pay for."

Defendant also identified text messages relating to July and August 2023 rental payments. She testified that the text, dated July 2, 2023, from Rosenblat provided that he received $200 from Defendant and that he was concerned she

3

would not be able to pay what she owes in rent unless she gets a job. A text dated, July 28, 2023, from Defendant stated that she paid $500 for July 2023 in cash. The same date, Rosenblat responded that balance due for July 2023 was $460, which included remaining rent plus a $100 late fee. Rosenblat also texted that "if any of this balance remains past 8/1 it will accrue a second round of late fees in addition to late fees unpaid on the August rent."

On cross-examination, Defendant admitted that Rosenblat was concerned that she would not be able to pay rent due to her unemployment. She stated that she paid the July 2023 rent in installments and that Rosenblat accepted those payments. Defendant testified that she paid the August 2023 rent in full but acknowledged it was untimely paid when her unemployment benefits came through on August 20, 2023.

Defendant testified that Rosenblat refused payment of $600 on September 13, 2023, because "he was angry at [Defendant] for an unrelated issue." She explained that Rosenblat is friends with people that she has conflict with or worked for in the past and she believed that Rosenblat was treating her differently and had refused rent payment based on rumor. Defendant conceded that she did not know for certain if Rosenblat had spoken to the people with whom she has conflict.

When questioned by the trial court, Defendant admitted that when she made untimely rental payments she had to pay rent plus late fees. She testified she attempted to pay September 2023 rent but was rejected because Rosenblat "was still angry at me and wanted to instead file to evict me." Defendant stated that Rosenblat had agreed to the payment plan via text for September but ultimately decided to refuse her payment. Defendant testified that Rosenblat also declined to accept the October 2023 rent. She stated that no payment was made in November,

December, or January. Defendant said that she attempted to contact Rosenblat about these rental payments, but he "didn't want anything to do with [her]."

The trial court then questioned Rosenblat about whether Defendant was accommodated and whether he had accepted some delayed rental payments. Rosenblat stated that in July 2023, he had allowed Defendant to pay when she could.[3] The text messages also show that Defendant paid August 2023 rent untimely.[4] However, Rosenblat testified that these "payments were always completed before the end of the month." He also stated that he had imposed a late fee for those payments.

Rosenblat stated that the lease had built in opportunities to receive late payment and that the lessor paid a late fee in doing so. He noted that under the terms of the lease, rent was "due on the first of the month" and that late penalties were imposed if rent was not received by the first of the month. He said that the late penalties increased if rent was not paid by the fifth and the tenth of the month.

Rosenblat conceded that when Defendant was employed she was paying rent timely. He stated when she had lost her job, he had given her some leeway, but when she asked about paying some of the September 2023 rent in October, he "put [his] foot down." Rosenblat again testified that he had accepted late rent but he had never allowed Defendant to complete the rent into the following month. He stated when Defendant was not going to finish paying September rent until October 2 or 3, 2023, he was worried about when he would receive payment of the October 2023 rent.

---

[3] The text messages, dated July 20 and July 28, 2023, indicate that the payment of rent plus the late fee was submitted towards the end of July.

[4] The text message, dated August 20, 2023, provided: "Dropped $1,160 at your home for August 2023 rent, late fee, and water bill."

The trial court denied the affirmative defenses raised by Defendant.[5] The trial court then proceeded to the rule for possession. The following testimony was adduced at the eviction portion:

Rosenblat stated that he leased 4007 Prytania Street, Apartment No. 9, to Defendant. He stated he did not receive rent from Defendant for the months of September 2023, October 2023, November 2023, December 2023, January 2024, and February 2024.

On cross-examination, Rosenblat testified that Defendant proposed a payment plan for the September 2023 rent, which he rejected. When questioned about the September 7, 2023 text message exchange, Rosenblat stated that he rejected Defendant's payment offer because "She was lying about things. And she hadn't paid the rent[.]" He continued that he had "no assurances that [Defendant] was going to be able to continue to pay the rent based on the whole scope of everything."

At the conclusion of testimony, the trial court found that the "rent had not been paid according to the terms of the lease" and ordered that Defendant leave the premises by 4:00 p.m. on February 27, 2024.

Defendant filed the instant appeal. Plaintiff filed an answer to the appeal, seeking a modification of the trial court's judgment, claiming it is entitled to court costs and attorney's fees in connection with the rule for possession. Additionally,

---

[5] With regard to the affirmative defense of creating new custom, the trial court found that the Defendant did not establish her burden with respect to accepting rent payments different than the terms of the lease agreement. As to the defense of judicial control, the trial court stated it did not find that the "non-payment of rent" to be a breach of the lease that is of minor importance. It also found that Defendant was unable to make payment due to financial hardship, it was not due to a good faith mistake of fact. With regard to the allegations of inconsistency, the trial court stated that there was sufficient due process set forth in the notice and the rule that the landlord was evicting Defendant for nonpayment of rent.

Plaintiff seeks attorney's fees in connection with this appeal and frivolous appeal damages.

**LAW AND DISCUSSION**

"La. C.C. art. 2668 defines a lease as a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." *Cahn v. Cox*, 2012-0315, p. 4 (La. App. 4 Cir. 10/24/12), 101 So.3d 1031, 1033. "Further, in a lease contract, the lessee is bound to pay the rent according to the agreed terms." *Id*. (citing La. C.C. art. 2683). "However, if the lessee fails to pay the rent when it becomes due, the lessor may dissolve the lease and regain possession of the property as provided by law." *Id*. (citing La. C.C. art. 2704).

This Court in *Bernadas v. Palmer*, 2022-0758, pp. 6-7 (La. App. 4 Cir. 4/19/23), 360 So.3d 620, 625–26, summarized the standard of review in an eviction proceeding, as follows:

> In an eviction proceeding, the appellate court reviews the trial court's factual findings for manifest error. *235 Holdings, LLC v. 235 Enters., LLC*, 2020-0658, p. 5 (La. App. 4 Cir. 12/15/21), 334 So.3d 862, 866 (citing *Armstrong Airport Concessions v. K-Squared Rest., LLC*, 2015-0375, p. 9 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100). Under this standard of review, an appellate court "must ... find from the record that there is a reasonable factual basis for the [trial] court's findings of fact[,]" and "the record must establish that the [trial] court's findings are not manifestly erroneous or clearly wrong." *Guste Homes Resident Mgmt. Corp. v. Thomas,* 2020-0110, p. 8 (La. App. 4 Cir. 7/29/20), 302 So.3d 1181, 1187 (citing *Mazzini v. Strathman,* 2013-0555, p. 4 (La. App. 4 Cir. 4/16/14), 140 So.3d 253, 256). "Factual findings should not be reversed on appeal absent manifest error." *Id*. (quoting *Mazzini*, 2013-0555, p. 4, 140 So.3d at 256). "Where legal errors of the trial court have tainted the fact finding process" though, "the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a *de novo* review of the record and determine the preponderance of the evidence." *Id*. at pp. 8-9, 302 So.3d at 1187 (quoting *Hous. Auth. of New Orleans v. King*, 2012-1372, p. 5 (La. App. 4 Cir. 6/12/13), 119 So.3d 839, 842).

The appellate court also reviews an eviction matter *de novo* if the appeal presents a purely legal question. *235 Holdings, LLC*, p. 5, 334 So.3d at 867 (citing *Armstrong*, 2015-0375, p. 9, 178 So.3d at 1101). Additionally, in an eviction proceeding, "when there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is *de novo*." *Affordable Care, LLC v. Martin*, 54,286, p. 14 (La. App. 2 Cir. 4/13/22), 337 So.3d 615, 623 (citing *Armstrong*, 2015-0375, pp. 9-10, 178 So.3d at 1101).

*Id*. (quoting *JoAnn Place v. Ricard*, 2022-0456, pp. 10-11 (La. App. 4 Cir. 12/27/22), 356 So.3d 518, 526).

"The lessor has the burden of proving, by a preponderance of the evidence, a valid lease and that the violation of the lease provides sufficient grounds for an eviction." *Bernadas*, 2022-0758, p. 7, 360 So.3d at 626 (quoting *200 Carondelet v. Bickham*, 2017-0328, pp. 4-5 (La. App. 4 Cir. 10/25/17), 316 So.3d 955, 959 "A judgment of eviction must be reversed when the lessor fails to prove the legal ground upon which the lessee should be evicted." *Id*. (quoting *Hous. Auth. of New Orleans v. Haynes,* 2014-1349, p. 15 (La. App. 4 Cir. 5/13/15), 172 So.3d 91, 99).

On appeal, Defendant argues that the trial court erred in denying her affirmative defense that Plaintiff created a custom of accepting late rental payments. Defendant further claims that the trial court erred in evicting her from the premises because there is insufficient evidence to establish she failed to pay rent.

<u>Custom of Accepting Late Payments</u>

"An affirmative defense is a defense that raises a new matter, which assuming the allegations in the petition are true, will have the effect of defeating a plaintiff's demand on its merits." *235 Holdings, LLC*, 2020-0658, p. 7, 334 So.3d at 867 (citing *Fin & Feather, LLC v. Plaquemines Par. Gov't*, 2016-0256, pp. 6-7 (La. App. 4 Cir. 9/28/16), 202 So.3d 1028, 1033). "A lessee pleading an

8

affirmative defense to eviction "bears the burden of proof on that defense, which must be established by a preponderance of the evidence." *Id*. at p. 7, 334 So.3d at 867–68 (citing *Guste Homes Resident Mgmt. Corp. v. Thomas*, 2020-0110, p. 14 (La. App. 4 Cir. 7/29/20), 302 So.3d 1181, 1190; *Jeanmarie v. Peoples*, 2009-1059, p. 6 (La. App. 4 Cir. 3/16/10), 34 So.3d 945, 950; *Touro Infirmary v. Marine Med. Unit, Inc.*, 1996-2506, p. 7, n. 3 (La. App. 4 Cir. 5/21/97), 699 So.2d 90, 93).

"The general rule is that where a lessor customarily accepts late rental payments, 'such custom has the effect of altering the original contract with respect to punctuality of rent payments' and the landlord waives their right to strict enforcement of the lease terms." *Nuccio Fam., LLC v. Cooties Corp.*, 2020-0659, p. 9 (La. App. 4 Cir. 5/12/21), 319 So.3d 926, 932 (quoting *Versailles Arms Apartments v. Pete*, 545 So.2d 1193, 1195 (La. App. 4th Cir. 1989)). "The basis for that rule is that it would be 'inequitable to allow a lessor to mislead or lull a tenant into a false sense of security by accepting late rent payments for an extended period, without demand for punctuality, and then on a future date of his own choosing, cancel the lease for nonpayment of rent.'" *Id*

In *Versailles*, the lease contract provided that the rent was to be paid on the first day of each month. However, the tenant consistently paid after the fifth day of the month when the tenant received her monthly rental assistance check. After accepting late payments for eleven months, the landlord moved to evict the tenant. This Court found that the landlord's regular acceptance of late payments for several months amounted to a waiver of its right to strictly enforce the lease. *Versailles*, 545 So.2d at 1195.

In *Olivier v. Roland*, 2003-1988, pp. 7-8 (La. App. 4 Cir. 11/3/04), 888 So.2d 998, 1001-02, however, this Court affirmed an eviction where the lessor had

accepted only two late monthly payments over a two year period. This Court

distinguished *Versailles*, stating:

> [I]n *Versailles*[,] the owner consistently accepted the monthly rent late, knowing the tenant did not receive her monthly assistance check until the fifth day of the month. In this case, Ms. Olivier admitted to accepting late rent payments from Ms. Roland. However, contrary to Ms. Roland's assertion, Ms. Olivier did not have a "long custom" of accepting partial and late rent payments. The record reflects that Ms. Olivier had been renting property to Ms. Roland since August 2001, and prior to September 2003, Mrs. Roland was late paying her rent only twice and, in both instances, she paid a late fee. Clearly, Ms. Olivier's acceptance of two late monthly rent payments during the two-year period cannot be considered an established custom. Also, Ms. Olivier expressed her frustration with the late rent in the September 18, 2003 written notice of termination, stating she was "no longer willing to chase [Ms. Roland] for rent." Because Ms. Roland has not proven that a customary practice of remitting and accepting late rent payments existed between the parties, her argument that Ms. Olivier was required to give advance notice to terminate the custom is without merit.

*Olivier,* 2003-1988, pp. 7-8, 888 So.2d at 1001.

In the case at bar, similar to *Olivier*, Defendant has not proven a customary

practice of accepting late rental payments. The record shows that Rosenblat only

accepted late and/or payment in installments for approximately two months. He

testified that he had accepted untimely payments in July 2023 and August 2023

only to accommodate Defendant because of her recent unemployment. However,

Rosenblat also stated that Defendant was assessed a late fee for the delayed

payments. Defendant also admitted when she paid rent untimely, she paid the rent

plus the late fees. The text messages reveal that Defendant sought to pay her

September rent late and in installments, but that Rosenblat ultimately refused her

proposed payment plan and intended to move forward with eviction. The record

also shows, as in *Olivier*, that Rosenblat communicated his frustration and concern

with Defendant's inability to make rent. Based on the foregoing, Defendant has not

established a custom of accepting late payments to such an extent that Plaintiff cannot evict Defendant for her failure to pay rent. *See Nuccio Fam., LLC*, 2020-0659, p. 10, 319 So.2d at 933 (affirming an eviction and finding that the landlord did not waive right to enforce the lease where partial late payments were accepted for four months and the tenant was assessed late fees). Accordingly, the trial court did not err in rejecting this affirmative defense.

<u>Sufficient Evidence to Evict / Retaliation</u>

Defendant contends that the trial court erred in evicting Defendant because there is insufficient evidence to establish she failed to pay rent. Instead, Defendant claims that Rosenblat chose to reject her rent and to evict her in retaliation over an interpersonal conflict.

As noted above, the lessor has the burden of proving, by a preponderance of the evidence, a valid lease and that the violation of the lease provides sufficient grounds for an eviction. *235 Holdings, LLC*, 2020-0658, p. 6, 334 So.3d at 867. "A lease may be made orally or in writing." La. C.C. art. 2681; *see also* La. C.C. art. 4704 (defining a lease as "any oral or written lease" in the context of an action to evict a tenant). "In order to confect a lease, there are 'three essential [elements]...: the thing, the price and the consent.'" *Bridges v. Anderson,* 2016-0432, p. 4 (La. App. 4 Cir. 12/7/16), 204 So.3d 1079, 1081 (quoting *Larose v. Barrow,* 499 So.2d 1299, 1301 (La. App. 4 Cir. 1986).

The record shows the original lease expired on May 31, 2023. Rosenblatt subsequently increased the rent by $45 a month, effective June 1, 2023. Rosenblat also testified that rent was due on the first on the month and that the failure to pay rent timely resulted in late fees. Rosenblat stated Defendant did not pay rent in September 2023, October 2023, November 2023, December 2023, January 2024,

or in February 2024. Defendant also said that Plaintiff refused to accept September and October 2023 rent and admitted that she did not pay November 2023, December 2023, and January 2024. This was sufficient to show that Defendant failed to pay the rent when it was due and was properly evicted from the premises. The trial court was not manifestly erroneous or clearly wrong in reaching this conclusion.

Moreover, Defendant put on testimony in an attempt to establish that Plaintiff evicted her on the basis of retaliation and the trial court apparently did not find it convincing. Defendant stated that Rosenblat refused to accept the September 2023 rent because he was friends with individuals with whom she had conflict, but admitted that she did not know if Rosenblat had communicated with those individuals about the interpersonal conflict. Moreover, both parties testified that Rosenblat accommodated Defendant due to her unemployment for two months prior to proceeding with eviction. Although Rosenblat did indicate he was frustrated with Defendant's lengthy excuses regarding her late rental payments; his testimony shows that he proceeded with an eviction because Defendant could not pay rent and he had no guarantee that she would be able to make rent in the future.

In a manifest error standard of review, a trier of fact's determinations concerning the credibility of witnesses are granted great deference. *1205 St. Charles Condo. Assoc. Inc. v. Abel*, 2018-0566, p. 3 (La. App. 4 Cir. 12/19/18), 262 So.3d 919, 922. Moreover, "[w]here the findings of fact are based on determinations regarding the credibility of witnesses, we must defer to the factfinder's determination and, specifically, '[w]here the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous.'" *Taylor v. Louisiana*

12

*Mut. Med. Ins. Co.*, 2014-0727, p. 4 (La. App. 4 Cir. 1/14/15), 158 So.3d 900, 902 (quoting *Snider v. Louisiana Medical Mut. Ins. Co.,* 2013-0579, p. 20 (La. 12/10/13), 130 So.3d 922, 939). We cannot say the trial court was manifestly erroneous in electing to credit the testimony of Rosenblat rather than Defendant in this regard. This assignment of error lacks merit.

*Costs and Attorney's Fees*

In its brief and its answer to appeal, Plaintiff contends that the trial court erred failing to award court costs and $2,550.00 in attorney's fees under La. C.C.P. art. 4731(C)(3).

"As a general rule, attorney's fees are not allowed except where authorized by statute or contract. *Robin v. Wong*, 2007-0547, p. 3 (La. App. 4 Cir. 10/24/07), 971 So.2d 386, 388 (citing *Nassif v. Sunrise Homes, Inc.,* 1998–3193, p. 2 (La. 6/29/99), 739 So.2d 183, 184). Statutes providing for penalties and attorney's fees are penal in nature and must be strictly construed. *Delta Chem. Corp. v. Lynch,* 2007-0431, p. 12 (La. App. 4 Cir. 2/27/08), 979 So.2d 579, 588 (citing *Adams v. Burger King,* 2004-0146, p. 6 (La. App. 1 Cir. 2/11/05), 906 So.2d 540, 544, and *Langley v. Petro Star Corp. of La.,* 2001-0198, pp. 3-4 (La.6/29/01), 792 So.2d 721, 723).

"The trial court has much discretion in fixing an award of attorney['s] fees, and its award will not be modified on appeal absent a showing of an abuse of discretion." *Gulf Coast Bank & Tr. Co., Inc. v. Casse*, 2017-0489, p. 4 (La. App. 4 Cir. 11/22/17), 231 So.3d 812, 815 (citing *Whitney Bank v. NOGG, L.L.C.,* 2015-1399, pp. 6-7 (La. App. 1 Cir. 6/3/16), 194 So.3d 819, 824).

La. C.C.P. art. 4731 provides, in part:

A. If the lessee or occupant fails to comply with the notice to vacate required under this Title, or if the lessee has waived his right to notice to vacate by written waiver contained in the lease, and has lost his right of occupancy for any reason, the lessor or owner, or agent thereof, may cause the lessee or occupant to be cited summarily by a court of competent jurisdiction to show cause why he should not be ordered to deliver possession of the premises to the lessor or owner. The rule to show cause shall state the grounds upon which eviction is sought.

. . .

C.

. . .

(3) The court may award costs and attorney fees to the prevailing party for actions brought pursuant to this Article.

The record shows that Defendant was still in the premises at the time of the eviction trial and thus apparently did not comply with the notice to vacate, which provided that the apartment be vacated ten days after the receipt of notice. However, La. C.C.P. art. 4731 does not mandate that attorney's fees and court costs be awarded. Further, the assessment of attorney's fees and costs are within the trial court's discretion. Moreover, the record shows that Defendant was struggling with unemployment. We do not find that the trial court abused its discretion in refusing to award costs and attorney's fees. Accordingly, we decline Plaintiff's request to modify the trial court's judgment with an assessment of court costs and attorney's fees.

*Damages for Frivolous Appeal*

Plaintiff in its answer and its brief claim it is entitled to attorney's fees and frivolous appeal damages for responding to Defendant's appeal.

This Court in *In re Precept Credit Opportunities Fund, L.P.*, 2021-0428, pp. 9-10 (La. App. 4 Cir. 1/19/22), 366 So.3d 409, 415-16, summarized the law on awarding frivolous appeal damages, as follows:

14

Frivolous appeal damages are authorized, in an appropriate case, by statute; La. C.C.P. art. 2164 provides that "[t]he court may award damages, including attorney fees, for frivolous appeal." *See also* Uniform Rules - Courts of Appeal, Rule 2-19 (providing that "[t]he court may award damages for frivolous appeal in civil cases as provided by law"). But, the statute authorizing frivolous appeal damages must be strictly construed in the appellant's favor given that it is penal in nature. *Sullivan v. Malta Park*, [20]16-0875, pp. 5-6 (La. App. 4 Cir. 1/31/17), 215 So.3d 705, 709 (quoting *Hunter v. Maximum Grp. Behavioral Servs., Inc.*, [20]10-0930, p. 6 (La. App. 4 Cir. 3/16/11), 61 So.3d 735, 739).

Likewise, the jurisprudence has imposed a strict standard for awarding frivolous appeal damages, which this court summarized as follows:

Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be granted.... [A]n appeal is frivolous if it does not present a substantial legal question, if the sole purpose of the appeal is delay, or if the appealing counsel does not seriously believe the view of the law that he advocates. However, this court is reluctant to grant frivolous appeal damages because of the chilling effect it may have on the appellate process.

Damages for a frivolous appeal will be awarded if the appellant is attempting to delay the action, if the appellant does not believe what he is advocating, or if the appeal presents no substantial legal question. Damages for frivolous appeal are properly awarded only when the proposition advocated is so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes.

*Alexander v. La. State Bd. of Private Investigator Examiners*, [20]19-0778, p. 20 (La. App. 4 Cir. 4/1/20), 293 So.3d 1243, 1256-57, *writ denied*, 20-01072 (La. 11/10/20), 303 So.3d 1039 []

Although a successful appeal is not a frivolous appeal by definition, an unsuccessful appeal is not necessarily a frivolous appeal. *Miralda v. Gonzalez*, [20]14-0888, pp. 33 (La. App. 4 Cir. 2/4/15), 160 So.3d 998, 1019. Indeed, "[t]he slightest justification for an appeal precludes damages for a frivolous appeal." *Collins v. Franciscan Missionaries of Our Lady Health System, Inc.*, [20]19-0577, p. 11 (La. App. 1 Cir. 2/21/20), 298 So.3d 191, 198, *writ denied*, 20-0480 (La. 6/22/20), 297 So.3d 773.

Only when an appeal is "unquestionably frivolous" is an award of frivolous appeal damages appropriate. *Hampton v. Greenfield*, 618 So.2d 859, 862 (La. 1993).

Moreover, this Court generally refrains from awarding damages for frivolous appeals against *pro se* litigants. *Joseph v. Hartford Ins.,* 2015-1218, p. 8 (La. App. 4 Cir. 4/6/16), 191 So.3d 647, 652. Further, attorney's fees are "usually awarded where a party who was awarded attorney['s] fees by the trial court is forced to and successfully defends an appeal." *PVCA, Inc. v. Pac. W. TD Fund, LP*, 2021-0753, p. 12 (La. App. 4 Cir. 7/13/22), 366 So.3d 243, 253 (quoting *Maldonado v. Cannizzaro*, 2018-0177, p. 14 (La. App. 4 Cir. 10/10/18), 257 So.3d 733, 743). "The award of additional attorney['s] fees is to keep the appellate judgment consistent with the underlying judgment." *Id*.

Here, it does not appear that this appeal can be classified as unquestionably frivolous. Defendant is *pro se* and appears to have a serious belief the eviction was not warranted and in the arguments she is advocating. It likewise does not appear that Defendant filed the appeal in bad faith or that she filed for delay purposes because the record shows that she has already been evicted. Additionally, no attorney's fees were assessed at the trial court level and thus there is no need to provide for fees that were not awarded in the underlying judgment. Plaintiff's request for frivolous appeal damages is denied.

**DECREE**

For the foregoing reasons, we affirm the trial court's judgment and deny Plaintiff's request in its answer for costs, attorney's fees, and frivolous appeal damages.

**AFFIRMED; ANSWER TO APPEAL DENIED**